John A. Mayers, Esq. (CSB #149149)
MULVANEY, KAHAN & BARRY
401 West A Street, 17th Floor
San Diego, CA 92101-7994
Telephone: 619 238-1010
Facsimile: 619 238-1981
Email: jmayers@mkblaw.com

Attorneys for Defendant LAW OFFICE OF
DANIEL J. HORWITZ

## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA WELKER<br><br>          Plaintiff,<br><br> v.<br><br>LAW OFFICE OF DANIELJ. HORWITZ,<br><br>          Defendant. | CASE NO. 08-CV-2259-MMA-WMc<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12 (B) (6) AND CALIFORNIA ANTI-SLAPP LEGISLATION; REQUEST FOR FEES AND COSTS<br><br>Date:  March 20, 2009<br>Time:  2:30<br>Judge:  Hon. Michael M. Anello |

I.

## HISTORY OF THE ACCOUNT

        This matter stems from a debt in the amount of $23,508.61 (hereinafter "Account 2"), incurred by Plaintiff ERICA WELKER after utilizing the services of a medical facility known as Ambulatory Care Surgery Center on November 11, 2004 and again on January 13, 2005.   Account 2 was originally assigned to a local collection agency.   On April 21, 2008, Plaintiff (then and now represented by attorneys HYDE & SWIGART), sued the local collection agency for alleged FDCPA violations in this court (Case no. 3:08-cv-00723-JLS-CAB). The collection agency withdrew from Account 2 and settled the federal court lawsuit on or about September 9, 2008.

1

LAW OFFICES
MULVANEY, KAHAN & BARRY
A LIMITED LIABILITY PARTNERSHIP
SEVENTEENTH FLOOR
401 WEST A STREET
SAN DIEGO, CALIFORNIA 92101-7994
TELEPHONE 619 238-1010
FACSIMILE 619 238-1981

1   In a similar, separate matter, the same local collection agency was hired to

2   collect a debt in the amount of $7,593.17 owed by another individual, SHANNON

3   CURIEL, for utilizing the same medical facility (hereinafter Account 1"). Attorneys

4   HYDE & SWIGART filed a separate, though virtually identical, FDCPA action against

5   the same collection agency on May 7, 2008 (Case no. 3:08-cv-00825-LAB-NLS). The

6   collection agency then withdrew from Account 1 and settled that federal court lawsuit

7   on or about September 16, 2008.

8   Each of the FDCPA suits against the collection agency alleged picayune,

9   technical alleged violations of the FDCPA. Neither Account 1 nor Account 2 were

10  ever settled or paid.

11  The Law Office of Daniel J. Horwitz (hereinafter "Horwitz"), was thereafter

12  hired to pursue the collection of Account 1 and Account 2. State court lawsuits were

13  filed against SHANNON CURIEL and ERICA WELKER on October 7, 2008 on behalf

14  of Ambulatory Care Surgery Center for payment of Account 1 and Account 2.

15  Importantly: *There has never been a single communication between Horwitz and*

16  *either SHANNON CURIEL or ERICA WELKER, other than the service of the*

17  *summons, complaint, notice of case assignment, and validation notice by a*

18  *registered process server.*

19  On December 5, 2008, attorneys HYDE & SWIGART filed this lawsuit on

20  behalf of ERICA WELKER, as well as case no. 08-CV-2262-L-WMc on behalf of

21  SHANNON CURIEL, against Horwitz, again alleging violations of the FDCPA. And

22  still, neither Account 1, nor Account 2 has been settled or paid.

23  Plaintiff's case must be dismissed because each and every action taken by

24  Horwitz was in furtherance of state court litigation and is therefore absolutely

25  privileged conduct and not actionable. Further, Plaintiff can not properly articulate

26  either FDCPA violation she asserts related to Horwitz' validation notice. As a result,

27  this lawsuit constitutes "Strategic Litigation Against Public Participation" (SLAPP) as

28

2

MEMORANDUM OF POINTS AND
AUTHORITIES

Case No. 08-CV-2259- MMA-WMc

defined by California law, as set forth in California Code of Civil Procedure § 425.16, and must be stricken as a matter of law.

More specifically, Plaintiff alleges: 1) failure to include the fact that a dispute to the debt must be "in writing" (Complaint, page 5, paragraph 27), and; 2) failure to include the amount of the debt because of a demand for interest, court costs, and attorney's fees (Complaint, page 5, paragraph 28).  Neither claim withstands minimal scrutiny.

## II.
## THE COMPLAINT MUST BE DISMISSED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Where, as here, it appears beyond doubt that the Plaintiff can prove no set of facts in support of her claim which would entitle her to relief, the Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957). A dismissal under Rule 12(b)(6) can be based on either: 1) the lack of a cognizable legal theory; or 2) the absence of sufficient facts alleged under a cognizable legal theory. <u>See Smilecare Dental Group v. Delta Dental Plan of Cal., Inc.</u>, 88 F.3d 780, 783 (9th Cir. 1996); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

## III.
## IT IS NO LONGER PROPER TO ALLEGE THAT THE DISPUTE MUST BE "IN WRITING"

Pursuant to the ruling in the case of <u>Camacho v. Bridgeport Fin. Inc.</u> (9th Cir. 2005) 430 F.3d 1078, verification notices now need not state that the consumer must use a writing to raise a dispute that overcomes the § 1692g(3) assumption by the debt collector that the debt is valid.  A consumer is entitled to dispute a debt orally to overcome a collector's assumption that a debt is valid, although only a written dispute of the debt triggers the collector's duty to provide verification of the debt.

///

LAW OFFICES
MULVANEY, KAHAN & BARRY
A LIMITED LIABILITY PARTNERSHIP
SEVENTEENTH FLOOR
401 WEST A STREET
SAN DIEGO, CALIFORNIA 92101-7944
TELEPHONE 619 238-1010
FACSIMILE 619 238-1981

MEMORANDUM OF POINTS AND AUTHORITIES

Case No. 08-CV-2259- MMA-WMc

LAW OFFICES
MULVANEY, KAHAN & BARRY
A LIMITED LIABILITY PARTNERSHIP
SEVENTEENTH FLOOR
401 WEST A STREET
SAN DIEGO, CALIFORNIA 92101-7944
TELEPHONE 619 238-1010
FACSIMILE 619 238-1981

The Ninth Circuit held that collectors could not notify consumers that they will assume that a debt is valid unless they receive a written notice of dispute. Instead, the consumer can dispute the debt's validity in writing or orally.

A verification notice, therefore, violates the FDCPA when it states that the debt would be presumed valid unless the consumer disputed it "in writing." Horwitz' notices do not require written disputes.[1]  This allegation, Plaintiff's first basis for an FDCPA violation, is outdated and frivolous.

### IV.
### THE VALIDATION NOTICE IN QUESTION ADEQUATELY AND PROPERLY DISCLOSES THE AMOUNT OF THE DEBT

The first element to include in a debt verification notice is the "the amount of the debt." The law requires a clearly stated amount that will be accepted by the creditor at the date of the notice. If the creditor is willing to accept the principal as payment in full, then disclosure of the principal due is sufficient. Barnes v. Advanced Call Center Technologies L.L.C. (7th Cir 2007) 493 F.3d 838.  Simply, if a debt collector will accept the specific dollar amount stated on the validation notice in satisfaction of the debt, then compliance with the FDCPA has been achieved.

The language used in the validation notice sent to Plaintiff describes the debt as:  "principal amount of claim."   A specific amount is demanded.   Given that payment of the amount would be acceptable as payment in full on the Account, lawful disclosure and FDCPA compliance has been achieved.  (See Declaration of Daniel Horwitz, served and filed herewith).

///

///

---

[1]     Each of Horwitz' validation notices, one to Plaintiff and one to Ms. Cuirel, are collectively attached to the Declaration of Daniel Horwitz as Exhibit "A."  Each validation notice was served on its intended recipient at the time the state court lawsuits were served.  Neither validation notice was mailed.

MEMORANDUM OF POINTS AND AUTHORITIES                                    Case No. 08-CV-2259- MMA-WMc

LAW OFFICES
**MULVANEY, KAHAN & BARRY**
A LIMITED LIABILITY PARTNERSHIP
SEVENTEENTH FLOOR
401 WEST A STREET
SAN DIEGO, CALIFORNIA 92101-7944
TELEPHONE 619 238-1010
FACSIMILE 619 238-1981

**V.**
## THE FAIR DEBT COLLECTION PRACTICES ACT SHOULD NOT BE INTERPRETED TO ACT AS A VEHICLE FOR ABUSE OF COMPLIANT COLLECTORS

The enacted purposes of the Fair Debt Collection Act include: "eliminate abusive debt collection practice" as well as *"to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.*" 15 U.S.C. § 1692(e).

The interaction of the least sophisticated consumer standard with the presumption that the FDCPA imposes strict liability has apparently opened the door to a proliferation of litigation. This is Plaintiff's second federal FDCPA suit. Having successfully used the first lawsuit to avoid paying her debt to the Ambulatory Care Surgery Center and to dissuade a collection agency from continuing to pursue payment, she logically filed a second suit hoping for the same advantage.

Ironically, it appears that it is often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by the FDCPA, not the individual who has been threatened or misled. The cottage industry that has emerged does not bring suits to remedy the "widespread and serious national problem" of abuse that the Senate observed in adopting the legislation in the 1970's, nor to ferret out collection abuse in the form of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process. Rather, the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs.

The statute need not be applied in this manner; and indeed, some decisions have recognized that courts should not countenance lawsuits based on frivolous

5

misinterpretations or nonsensical assertions of being led astray. <u>Russell v. Equifax A.R.S.</u> 74 F.3d at 34. It is interesting to contemplate the genesis of these suits. The hypothetical Mr. Least Sophisticated Consumer ("LSC") makes a $400 purchase. His debt remains unpaid and undisputed. He eventually receives a collection letter requesting payment of the debt which he rightfully owes. Mr. LSC, upon receiving a debt collection letter that contains some minute variation from the statute's requirements, immediately exclaims "This clearly runs afoul of the FDCPA!" and - rather than simply pay what he owes - repairs to his lawyer's office to vindicate a perceived "wrong."  "[T]here comes a point where this Court should not be ignorant as judges of what we know as men." <u>Watts v. State of Ind.</u>, 338 J.S. 49, 52, 69 S.Ct. 1347, 1349 (U.S. 1949).

Without a doubt and quite properly, the sweeping regulations of FDCPA protect consumers from abusive debt collection practices.  But the FDCPA was also enacted "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, 15 U. S. C. 1692 (e). Indeed, courts are to give life to the admonition that the standards stated in the FDCPA are intended to protect collectors against "bizarre or idiosyncratic interpretations of collection notices, the statute must be applied with some circumspection."

**VI.**
**SINCE THERE WERE NO FDCPA VIOLATIONS, THE ACTIONS OF HORWITZ**
**ARE ABSOLUTELY PRIVILEGED UNDER CALIFORNIA LAW**

**A.**     <u>**Litigation privilege**</u>

California Civil Code § 47 states, in pertinent part:
A privileged publication or broadcast is one made:...
         (b) In any... judicial proceeding..

The privilege is not limited to communications to or from governmental officials. It applies to communications preliminary to a proposed judicial proceeding, such as a demand letter from an attorney to a potential adversary. <u>Lerette v. Dean</u>

LAW OFFICES
**MULVANEY, KAHAN & BARRY**
A LIMITED LIABILITY PARTNERSHIP
SEVENTEENTH FLOOR
401 WEST A STREET
SAN DIEGO, CALIFORNIA 92101-7944
TELEPHONE 619 238-1010
FACSIMILE 619 238-1981

MEMORANDUM OF POINTS AND AUTHORITIES                                    Case No. 08-CV-2259- MMA-WMc

1  Witter Organization, Inc. (1976) 60 Cal.App.3d 573, 577.

2         California courts and the California legislature have long recognized that any

3  communications alleged to have been made or actually made within or in connection

4  with judicial proceedings are absolutely privileged, and may not form the basis of any

5  subsequent claim against the speaker. For well over a century, communications with

6  some relation to judicial proceedings have been absolutely immune from tort liability

7  by the privilege and codified as section 47(b). Rubin v. Green, 4 Cal.4th 1187, 1193,

8  17 Cal.Rptr.2d 828, 831 (1993).

9         In Silberg v. Anderson (1990) 50 Cal.3d 205, 212, the California Supreme

10  Court stated:

11         Section 47(2) further promotes the effectiveness of judicial proceedings
           by encouraging attorneys to zealously protect their clients' interests. "[I]t
12         is desirable to create an absolute privilege...not because we desire to
           protect the shady practitioner, but because we do not want the honest
13         one to have to be concerned with [subsequent derivative] actions ...."

14         The principal purpose of the privilege is to afford litigants and witnesses the

15  utmost freedom of access to the courts without fear of being harassed subsequently

16  by derivative tort actions. The usual formulation of the contours of the privilege was

17  stated by the California Supreme Court in Silberg, as follows:

18         The privilege applies to any communication (1) made in judicial or quasi-

19  judicial proceedings (2) by litigants or other participants authorized by law; (3) to

20  achieve the objects of the litigation; and (4) that have some connection or logical

21  relation to the action. [Id., 50 Cal.3d at 212, 266 Cal.Rptr. at 642.]

22         Because application of the privilege is essential to ensuring the integrity of the

23  judicial process, California courts have given the privilege an expansive reach, using

24  it to bar both statutory and tort causes of action, with a single exception for malicious

25  prosecution suits. See id., 50 Cal.3d at 215-16, 266 Cal.Rptr. at 644-645.

26  ///

27         In Edwards v. Centex Real Estate Corp. (1997) 53 Cal.App.4th 15, 30, the

28

LAW OFFICES
MULVANEY, KAHAN & BARRY
A LIMITED LIABILITY PARTNERSHIP
SEVENTEENTH FLOOR
401 WEST A STREET
SAN DIEGO, CALIFORNIA 92101-7944
TELEPHONE 619 238-1010
FACSIMILE 619 238-1981

MEMORANDUM OF POINTS AND                              Case No. 08-CV-2259- MMA-WMc
AUTHORITIES

LAW OFFICES
MULVANEY, KAHAN & BARRY
A LIMITED LIABILITY PARTNERSHIP
SEVENTEENTH FLOOR
401 WEST A STREET
SAN DIEGO, CALIFORNIA 92101-7944
TELEPHONE 619 238-1010
FACSIMILE 619 238-1981

court, in referring to the holding Silberg v. Anderson, cited above, states:

> A third policy behind the privilege identified by the Supreme Court is that of promoting the effectiveness of judicial proceedings "by encouraging attorneys to zealously protect their clients' interests." Thus, the privilege is extended to attorneys to protect them from the fear of subsequent derivative actions for communications made in the context of judicial proceedings ...

Here, Plaintiff has premised the entire complaint on matters connected to the state court action and thus is fully barred by California's litigation privilege codified at Cal. Civ. Code § 47. All of the actions alleged occurred in the course of judicial proceedings. They are therefore absolutely privileged under California law. It is hard to imagine any claim that falls more squarely within the bar of the litigation privilege.

**B.   Anti-SLAPP violation**

California Code of Civil Procedure § 425.16 states, in pertinent part:

> (b) (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike ...
>         (e) As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law...

Anti-SLAPP provisions have been held "substantive" for Erie doctrine purposes because they are not in conflict with the Federal Rules and advance the purposes of Erie by adopting the California procedural rules. In United States ex rel. Newsham v. Lockheed Missile & Space Co., Inc. (9th Cir. 1999) 190 F.3d 963, 973, the court holds:

> "Plainly, if the anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum. "

///

The constitutional right to petition includes the basic act of filing litigation or

8

otherwise seeking administrative action. <u>Dove Audio, Inc. v. Rosenfeld, Meyer & Susman</u> (1996) 47 Cal.App.4th 777, 784 Again, since each and every action of Horwitz was undertaken in the course of state court litigation proceedings, for the creditor still waiting to be paid, this action is in violation of the anti-SLAPP legislation.

## VII.
## <u>DEFENDANT IS ENTITLED TO ATTORNEY'S FEES AND SANCTIONS</u>

Horwitz respectfully requests an award of attorney's fees and costs associated with bringing this Motion pursuant to 15 U.S.C. section 1692k(a)(3). That section provides that:

> "on a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."

Plaintiff knew that her claim was meritless and pursued it with the purpose of harassing Horwitz. The Plaintiff does not take a position on the validity of the underlying debt. Nor could the plaintiff conceivably feel harassed, threatened or misled by the letter separate from the effects of the lawsuit that was served on her at the same time. Her mistaken belief that the alleged violation of the statute, arrived at merely by a strained construction of its language, constitutes harassment is, in essence, a complaint against the creditor for the temerity of requesting that she pay what she owes. Against this background, the Court should grant the Defendant's request for costs and attorney's fees pursuant to 1692k(a)(3).

Moreover, attorney's fees are properly awarded if an anti-SLAPP motion is granted. Code of Civil Procedure § 425.16(c) states, in pertinent part:

> In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.

And, in <u>Dowing v. Zimmerman</u> (2001) 85 Cal.App.4th 1400, 103 Cal.Rptr. 2d, 174, 193-194:

To prevail on a motion to strike under section 425.16, a SLAPP

9

LAW OFFICES
MULVANEY, KAHAN & BARRY
A LIMITED LIABILITY PARTNERSHIP
SEVENTEENTH FLOOR
401 WEST A STREET
SAN DIEGO, CALIFORNIA 92101-7944
TELEPHONE 619 238-1010
FACSIMILE 619 238-1981

defendant ordinarily must have competent legal representation, regardless of whether the defendant is an attorney or whether the defendant originally appears in the action in propria persona. The special motion to strike a SLAPP suit under section 425.16 is the remedial tool the Legislature gave to victims of such meritless suits. In our view, the purpose of the anti-SLAPP statue will be promoted by construing that statute broadly to permit a pro se SLAPP defendant, who has successfully brought a motion to strike the offending SLAPP suit with the assistance of special retained counsel, to recover mandatory reasonable attorney fees to compensate the retained counsel for the legal services provided.

Horwitz' counsel will, on order of this court, submit the documentation required by New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136 (2d Cir.1983) in order to establish the amount of costs and attorney's fees incurred.

## VIII.
## CONCLUSION

Plaintiff's second attempt to dissuade any collector from collection of a lawful debt in one year based on the improper use of the FDCPA scheme must not be permitted.  Neither of the stated grounds can be properly alleged.  Actions such as this run afoul of the spirit and intent of the law, and the complaint fails to state a cause of action upon which relief can be granted.

Moreover, the actions of Horwitz were absolutely privileged under California law, and the attempt by Plaintiff and her counsel to use the law to dissuade compliant collectors from pursuing a lawful debt collection is a blatant violation of California's anti-SLAPP law, which requires dismissal of the lawsuit and an award of costs and attorney's fees to be paid to reimburse defendant.

DATED:  January 20, 2009          MULVANEY, KAHAN & BARRY


                                   By: /s/ John A. Mayers _____
                                       John A. Mayers, Esq.
                                   Attorneys for Defendant LAW OFFICE OF
                                   DANIEL J. HORWITZ

LAW OFFICES
MULVANEY, KAHAN & BARRY
A LIMITED LIABILITY PARTNERSHIP
SEVENTEENTH FLOOR
401 WEST A STREET
SAN DIEGO, CALIFORNIA 92101-7994
TELEPHONE 619 238-1010
FACSIMILE 619 238-1981

MEMORANDUM OF POINTS AND AUTHORITIES
HORD.101.198591.1

Case No. 08-CV-2259- MMA-WMc