Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
**Hyde & Swigart**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone:   (619) 233-7770
Facsimile:    (619) 297-1022

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| Erica Welker<br><br>                  Plaintiff,<br>v.<br><br>Law Office of Daniel J. Horwitz<br><br>                  Defendant. | Case No: 08cv2259 IEG (WMc)<br><br>**Plaintiff's Motion for Summary Judgment**<br><br>Date: March 22, 2010<br>Time:  10:30 AM<br><br>Location: U.S. District Court<br>           Federal Courthouse,<br>           940 Front Street,<br>           Courtroom #1, 4th Floor<br>           San Diego, CA<br><br>Judge:  Hon. Irma E. Gonzalez |
|---|---|

I.   STATEMENT OF FACTS

The Law Office of Daniel J. Horwitz ("Defendant") is a law firm engaged in collecting alleged debts for creditors, including a doctor who operates a "surgery center facility" in San Diego. The story of Plaintiff, Ms. Erica Welker, is identical to that of Ms. Shannon Curiel, who, until recently, also had a case against Defendant before the Southern District.[1] It is also identical to others that Ms. Welker's counsel is aware of who are being defrauded by Defendant's client, and who have identical stories, but who have not filed suit.

All of these persons, those who have filed suit, as well as those who did not, allege that Defendant's client is involved in a form of fraud in which Defendant's client, along with another doctor, misrepresent insurance involvement in medical procedures as well as what, if anything, the patients of these doctors will have to pay for certain surgeries.

In this particular case, when Ms. Welker's insurance company refused to continue paying on questionable claims submitted by Defendant's client, that client began trying to collect money not owed from Ms. Welker, who had previously been told she would have to pay nothing. This attempt to obtain money from Ms. Welker began primarily because the business relationship between the two doctors became estranged. However, while these facts are somewhat complicated, they are also largely irrelevant other than as background information.

Here it is suffice to say that Defendant is a law firm that regularly collects debts for its clients,[2] and was attempting to collect from Ms. Welker the debt that this surgery center claims was owed. And, as Defendant and his client know, Ms. Welker vehemently denies any such debt was ever owed by her.

---

[1] Ms. Welker's matter, 08-CV-2259, and Ms. Curiel's matter, 08-CV-2262 were originally assigned to different judges. On Ms. Welker's Motion, both cases went before the Court. Ms. Curiel's matter settled and has been dismissed.

[2] See Ms. Welker's Complaint, Docket # 1, ¶ 13; Defendant's Amended Answer, Docket # 31, ¶ 13.

While attempting to collect this alleged debt, Defendant, a debt collector,[3] had a letter delivered to Ms. Welker.[4] In this letter Defendant, acting as a debt collector, violates both state and federal debt collection statutes. It is the content of this letter that forms the sole basis for this action.

This is a case that should have settled long ago. Ms. Welker and her counsel made every effort to dispose of this case early, and economically, and managed to do so in Ms. Curiel's case. However, Defendant is recalcitrant as to Ms. Welker.[5] And while the sums involved may seem relatively small to some, to a distressed consumer it is significant.

The defendant here is angry, and rather than settle a matter involving clear liability, Defendant has tried to intimidate Ms. Welker into dropping here case. Defendant previously filed motions pursuant to California's anti-SLAPP statute, and pursuant to 15 U.S.C. § 1692k(a)(3). It also filed a motion to dismiss pursuant to Fed. R. Civ. P. 12. In the anti-SLAPP motion Defendant asked for attorneys' fees and costs. Defendant also demanded sanctions against Ms. Welker and moved for attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), claiming Ms. Welker brought this action in bad faith and for the purpose of harassment. All of this was designed only to intimidate a financially distressed consumer who could never afford to pay such attorneys' fees and costs into abandoning her rights rather than risk moving forward to prove her claims. But move forward she did, and all of Defendant's motions to date have been denied.[6]

---

[3] See Exhibit A of the Declaration of Daniel J. Horwitz, attached to Defendant's previous motions, in which Defendant states that "This office is acting as a debt collector. Any information obtained will be used for that purpose."; See also, Ms. Welker's Exhibit A, attached.

[4] Id., ¶¶ 2-6.

[5] The defendant here is so angry, Mr. Horwitz has actually gone out on the Internet and posted public defamatory comments about plaintiff's counsel.

[6] See Ms. Welker's Exhibit B, attached.

## II. ISSUES BEFORE THE COURT

1. Does a debt collector violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") when it fails to advise consumers in its initial communication that the consumer must make certain disputes "in writing?"

2. Does a debt collector violate California's Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.32 ("Rosenthal Act"), when it fails to provide consumers with certain notices pursuant to Cal. Civ. Code § 1812.700?

3. Does a debt collector violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") when it fails to state in its initial communication with the consumer the full amount of the alleged debt?

Ms. Welker asserts that the applicable federal and state statutes, as well as pertinent case law, dictate these questions should be answered in the affirmative.

## III. ARGUMENT

Most of the issues here have already been previously analyzed and discussed by the Court in its June 16, 2009 Order.[7] However, because attempts at settling this matter have failed even after that order was issued, Ms. Welker files this Motion for Summary Judgment.

### A. DEFENDANT VIOLATED THE FDCPA WHEN IT FAILED TO ADVISE MS. WELKER IN ITS INITIAL COMMUNICATION THAT ANY DISPUTE BY MS. WELKER UNDER 15 U.S.C. § 1692g(a)(4) and (a)(5) HAD TO BE IN WRITING.

15 U.S.C. § 1692g(a)(4) and (a)(5) both require debt collectors advise consumers in their initial communication with the consumer that the consumer is entitled to certain rights if the consumer takes certain action <u>in writing</u>. "[The FDCPA] assigns lesser rights to debtors who orally dispute a debt and greater rights

---

[7] Id.

1  to debtors who dispute it in writing." *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d
2  1078, 1082 (9th Cir. 2005).  In *Camacho*, the Ninth Circuit held that a debt
3  collector violates the FDCPA when it <u>adds</u> the phrase "in writing" to the part of the
4  notice required under 15 U.S.C. § 1692g when that phrase does not exist in the
5  statute, in that case, 15 U.S.C. § 1692g(a)(3).  The issue there was whether a debt
6  collector could legally require a consumer dispute a debt "in writing" when the
7  section under which the consumer was disputing the debt did not require such a
8  condition.  The court held it could not.

9  The issue here is whether debt collectors may <u>delete</u> the phrase "in writing"
10 from different portions of the FDCPA than that reviewed in *Camacho* without
11 violating the FDCPA, that is, 15 U.S.C. § 1692g(a)(4) and (a)(5).  The Ninth Circuit
12 decisions in *Camacho* and *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.
13 3d 1162 (9th Cir. 2006), make it clear they may not.  In *Camacho*, the Ninth Circuit
14 looked to the Supreme Court's decision in *Lamie v. United States Trustee*, 540 U.S.
15 526, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) and considered whether a debt
16 collector misrepresented the rights of consumers under the FDCPA when it added
17 the words "in writing" to the portion of its notice required by section 1692g(a)(3).[8]
18 The Ninth Circuit held that it did violate the FDCPA because "we must give effect
19 to the plain meaning of the statute," and, because section 1692g(a)(3) does not
20 include the phrase "in writing," and it cannot be <u>added</u> by the debt collector.

21 Here, the defendant <u>deleted</u> the phrase "in writing" from sections 1692g(a)(4)
22 and (a)(5), which specifically state the debt collector must include the phrase "in
23 writing."  For the same reasons explained by in *Camacho*, a debt collector likewise
24 cannot delete such a phrase.

---

[8] 15 U.S.C. § 1692g(a)(3) states that, "Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing – a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;"

In *Camacho*, the Ninth Circuit explained that, "The plain meaning of § 1692g is that debtors can trigger the rights under subsection (a)(3) by either an oral or written "dispute," while debtors can trigger the rights under subsections (a)(4) and (a)(5) only through written dispute." 430 F.3d, at 1081.

The Ninth Circuit recognized the importance of this issue. As the Court noted, allowing disputes to be raised orally had several significant consequences for consumers, including: 1) the right to have the dispute noted in credit information sent to others; 2) the right to have payments applied only to undisputed debts; and 3) the right to be free of debt collection communications at times or locations known to be inconvenient to the consumer. *Id*. at 1082. The court went on to explain that, "Because we conclude that the FDCPA's statutory scheme, which assigns lesser rights to debtors who orally dispute a debt and greater rights to debtors who dispute it in writing, is not absurd, we are not at liberty to insert any additional language." 430 F.3d, at 1082.

The FDCPA assigns *lesser* rights to debtors who orally dispute a debt and *greater* rights to debtors who dispute it in writing. Thus, by failing to advise consumers they must dispute the debt under sections (a)(4) and (a)(5) in writing, Defendant denies consumers the greater rights afforded them. Defendant is not at liberty to delete that language. See also, *Ehrich v. I.C. Sys.*, 2010 U.S. Dist. LEXIS 4367 *18-19 (E.D.N.Y. Jan. 20, 2010) (Oral requests by consumers do not protect their rights under the FDCPA.)

This is not the first time this has come up. A number of district courts have held that omitting the words "in writing" violates the FDCPA. See *McCabe v. Crawford & Co., 272 F. Supp. 2d 736* (N.D. Ill. 2003) ("We do not agree that [the debt collector] fulfilled its duty under the FDCPA and hold that omitting the words "in writing" was a violation of § 1692g(a)."); See also, *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F. Supp. 2d 336, 340 (E.D.N.Y. 2002) (A debt collector that omits the phrase "in writing" violates the FDCPA, a strict liability statute.); See

also, *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 2009 U.S. Dist. LEXIS 84702 (E.D.N.Y. Sept. 10, 2009) ("Plaintiff is correct in faulting [the debt collector] for the omission. Plaintiff's claim cannot be described as a "bizarre or idiosyncratic" interpretation of what is required under the FDCPA; rather, the validation notice clearly omitted an important term – that the consumer must inform the debt collector in writing to be entitled to verification of the debt.").

Nowhere in Defendant's letter does Defendant advise consumers that they must dispute the debt "in writing" if consumers want to trigger the protections of subsections (a)(4) and (a)(5).[9] Consequently, Defendant's letter violates the FDCPA.

## B. DEFENDANT VIOLATED THE ROSENTHAL ACT WHEN IT FAILED TO PROVIDE CONSUMERS WITH CERTAIN NOTICES PURSUANT TO CAL. CIV. CODE § 1812.700.

Cal. Civ. Code § 1812.700 provides that in addition to the requirements imposed by the Rosenthal Act, third-party debt collectors subject to the FDCPA shall provide a notice in their initial communication to consumers. This notice must state:

> The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

---

[9] See Exhibit A of the Declaration of of Daniel J. Horwitz.; See also, Ms. Welker's Exhibit A, attached.

Cal. Civ. Code § 1812.700(a)-(b). Cal. Civ. Code § 1812.702 provides that the failure to provide this notice "shall be considered a violation of the Rosenthal Fair Debt Collection Practices Act (Title 1.6C (commencing with Section 1788))."

The letter in question was the initial communication with Ms. Welker,[10] and it does not include the requisite notice.[11] Consequently, Defendant violated the Rosenthal Act and is liable to Ms. Welker pursuant to California's Rosenthal Act.

## C. DEFENDANT VIOLATED THE FDCPA BECAUSE IT FAILED TO STATE THE FULL AMOUNT OF THE ALLEGED DEBT IN ITS INITIAL COMMUNICATION WITH MS. WELKER, AS REQUIRED BY 15 U.S.C. § 1692g(a)(1).

When Congress designed the FDCPA, "[i]t added the validation of debts provision [under 15 U.S.C. § 1692g] specifically to ensure that debt collectors gave consumers adequate information concerning their legal rights." *Swanson v. Southern Or. Credit Serv.*, 869 F.2d 1222 (9th Cir. 1988), citing S. Rep. No. 382, 95th Cong. 2d Sess. 4, reprinted in 1977 U.S. Code Cong. & Admin. News 1695, 1699.

In paragraphs 24 through 26 of her Complaint, Ms. Welker alleges that Defendant's October 2, 2008 letter is the initial communication by Defendant, and Defendant acknowledges this in the Declaration of Daniel J. Horwitz, paragraphs 2 and 3. The FDCPA requires a debt collector to provide, as part of its initial communication with a consumer, or within five days after that initial communication, a written notice. Part of this written notice must contain "the amount of the debt." 15 U.S.C. § 1692g(a)(1).

In the October 2, 2009 letter in question,[12] the defendant tells Ms. Welker

---

[10] See Exhibit A of the Declaration of of Daniel J. Horwitz, attached to Defendant's Motion, ¶ 2-6; See also, Ms. Welker's Exhibit A, attached.

[11] Id., first letter.

[12] See Exhibit A of the Declaration of Daniel J. Horwitz, attached; See also, Ms. Welker's Exhibit A, attached.

that it is collecting three distinct amounts of money.  First there is the "outstanding balance."  Second, "interest at the legal rate."  And finally, the defendant wants "reimbursement of court costs related to your past-due account for medical services rendered."  However, the defendant only reveals to Ms. Welker the "Principal amount of the claim," which the defendant claims is $23, 508.61.  Exactly what the defendant claims is owed besides this is left in doubt because the defendant does not provide Ms. Welker with a figure for the "interest," or any "court costs" that it claims are owed.  Court's have held that this is inadequate and violates the FDCPA.

Case after case has demonstrated the obvious; "[T]he amount of the debt" means everything that is allegedly owed by the consumer, not just a portion. Because the defendant fails to provide that amount in it's initial communication with Ms. Welker, the defendant violates 15 U.S.C. § 1692g(a)(1).

In *Clark v. Capital Credit & Collection Servs.,* 460 F.3d 1162, 1174 (9th Cir 2006), the Ninth Circuit noted that the FDCPA prohibits the false representation of "the character, amount, or legal status of any debt."  Defendant makes no other statements with regard to the amount of the debt, and these vague statements leave open the issue of what is actually alleged by the defendant to be owed.  In the Ninth Circuit, the impact of language alleged to violate section 1692g is judged under the "least sophisticated debtor" standard.  *Baker v. G.C. Services Corp.*, 677 F.2d 775, 778 (9th Cir. 1982).  See also, *Swanson v. Southern Or. Credit Serv.*, 869 F.2d 1222 (9th Cir. 1988).

The leading case on the issue before the Court is Judge Posner's decision in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000), a case that is factually similar to the case here.  In *Miller*, the debt collector demanded the "unpaid *principal* balance" (italics are Judge Posner's) and added, "this amount does not include accrued but unpaid interest, unpaid late charges, escrow advances or other charges…."  *Id. at 875*.  The Seventh Circuit held that such a statement is inadequate under the FDCPA.  "The statement does not

comply with the Act … The unpaid principal balance is not the debt; it is only a part of the debt; the Act requires statement of the debt." *Id.* See also, *Peter v. GC Servs. L.P.*, 310 F.3d 344 (5th Cir. 2002) ("Although the text of § 1692g does not explicitly provide that the disclosures required by it must be made in a non-confusing manner, courts have held that the statute implies that the required disclosures be set forth in a form and within a context that does not distort or obfuscate its meaning.)   See also, *Swanson v. Southern Or. Credit Serv.*, 869 F.2d 1222 (9th Cir. 1988).

And while the Ninth Circuit has not yet ruled on this issue directly, the Northern District of California has, adopting the Seventh Circuit's *Miller* analysis.  In *Dupuy v. Weltman*, 442 F. Supp. 2d 822 (N.D. Cal. 2006), the Northern District held that "Section 1692g(a)(1) requires debt collectors "to state the total amount due - interest and other charges as well as principal - on the date the dunning letter was sent." " 442 F. Supp. 2d at 827.  In *Dupuy*, the court found that a letter in which the debt collector indicated interest might be due violated the FDCPA because, just as here, the debt collector did not indicate the amount of that interest.

Here Defendant has done what the defendants did in *Miller and Dupuy*.  It sent an initial letter and demanded, not a specific figure as required by the FDCPA the Rosenthal Act, but $23,508.61 *plus interest at the legal rate, and reimbursement of court costs*.  As the Seventh Circuit has made clear, this statement does not comply with the FDCPA.  "The unpaid principal balance is not the debt; it is only a part of the debt; the Act requires statement of the debt."  *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000).  Consequently, Defendant has violated the FDCPA and the Rosenthal Act, and these statutes impose liability on Defendant.

### IV.   CONCLUSION

To the plaintiff, a distressed consumer, this case is an important one and she has made repeatedly attempts to settle.  The defendant has clear liability for violating two strict liability statutes.  However, rather than simply make reasonable

1  efforts at settling, the defendant chose to use a scorched earth defense and hope to
2  pressure the plaintiff into giving up on her claim.
3       For the reasons outlined above, the plaintiff's Motion for Summary Judgment
4  should be granted in its entirety.
5  Respectfully submitted,
6                                   **Hyde & Swigart**
7
8  Date: February 19, 2010              By: /s/ Robert L. Hyde
                                                    Robert L. Hyde
                                                    Attorneys for Plaintiff

**Hyde & Swigart**
San Diego, California