# Plaintiff's Exhibit B

Court's Order

Dated June 16, 2009

_____

Erica Welker

v.

Law Office of Daniel J. Horwitz

Case No: 08cv2259 IEG (WMc)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA WELKER,<br><br>                  Plaintiff,<br>vs.<br><br>LAW OFFICE OF DANIEL J. HORWITZ,<br><br>                  Defendant. | CASE NO. 08CV2259-IEG (WMc)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 10] |
| SHANNON CURIEL,<br><br>                  Plaintiff,<br>vs.<br><br>LAW OFFICE OF DANIEL J. HORWITZ,<br><br>                  Defendant. | CASE NO. 08CV2262-IEG (WMc)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 8] |

Plaintiffs Erica Welker and Shannon Curiel have each brought separate lawsuits against the Law Office of Daniel J. Horwitz for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"), and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.32 ("Rosenthal Act"). On January 20, 2009, Defendant filed a motion to dismiss in each of the related cases. (*Welker* Doc. No. 10; *Curiel* Doc. No. 8.) Because the claims in the respective complaints and issues in the motions to dismiss are the same in these two related cases, the Court shall address Defendant's motions together in this Order.[1]

---

[1] Unless the Court indicates otherwise, all citations by the Court shall refer to docket entries in the low-number case, *Welker v. Law Office of Daniel J. Horwitz*, Case No. 08CV2259-IEG (Wmc).

1    Plaintiffs' claims arise out of Defendant's alleged attempts to collect Plaintiffs' unpaid debts
2 on behalf of Ambulatory Care Surgery Center. (*Compl.Def.'s Mot. to Dismiss*, Ex. A.) Specifically,
3 Plaintiffs assert Defendant violated certain statutory requirements when it sent Plaintiffs dunning
4 letters[2] advising Plaintiffs of their debts and respective rights. (*Compl.* at ¶¶ 24–32.) The dunning letter
5 sent by Defendant to Welker indicated that the principal amount of the claim was $23,508.61, while
6 the dunning letter sent to Curiel indicated that the principal amount of the claim was $7,593.17. (*Def.'s
7 Mot. to Dismiss*, Ex. A.) On January 20, 2009, Defendant filed the instant motions to dismiss. After
8 the motions were fully briefed, the Court found the matters suitable for submission on the papers
9 pursuant to Civil Local Rule 7.1(d)(1). (Doc. No. 20.)

### Legal Standard

11   In evaluating a motion to dismiss brought pursuant to Federal Rule of Civil Procedure
12 12(b)(6), the Court must accept the complaint's allegations as true and construe them in the light most
13 favorable to Plaintiff. *See, e.g., Concha v. London*, 62 F.3d 1493, 1500 (9th Cir. 1995), cert.
14 dismissed, 116 S. Ct. 1710 (1996). The complaint's "factual allegations must be enough to raise a right
15 to relief above the speculative level . . ." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965
16 (2007) (allegations must provide "plausible grounds to infer" that plaintiff is entitled to relief). The
17 Court should grant 12(b)(6) relief only where the complaint lacks either a "cognizable legal theory"
18 or facts sufficient to support a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d
19 696, 699 (9th Cir. 1990). In testing the complaint's legal adequacy, the Court may consider material
20 properly submitted as part of the complaint or subject to judicial notice. *Swartz v. KPMG LLP*, 476
21 F.3d 756, 763 (9th Cir. 2007). Furthermore, under the "incorporation by reference" doctrine, the Court
22 may consider documents "whose contents are alleged in a complaint and whose authenticity no party
23 questions, but which are not physically attached to the [plaintiff's] pleading." *Janas v. McCracken* (In
24 re Silicon Graphics Inc. Sec. Litig.), 183 F.3d 970, 986 (9th Cir. 1999) (internal quotation marks

---

[2] A "dunning letter" is an alternative term for a collection notice.

1  omitted).[3]

2  //

## Analysis

Defendant argues the actions should be dismissed because Plaintiffs fail to state a claim, Defendant's actions are absolutely privileged under California Civil Code § 47, and Plaintiffs' complaints violate California's anti-SLAPP legislation. (Doc. No. 10-2 .) The Court addresses these arguments in turn.

### I.  Failure to State a Claim

Plaintiffs assert, *inter alia*, Defendant violated the FDCPA in two ways: (1) Defendant failed to include the amount of the debt in the dunning letter as required by 15 U.S.C. § 1692g(a)(1), and (2) Defendant misrepresented the means by which Plaintiff could dispute the debt in violation of 15 U.S.C. § 1692g(a)(4) and (a)(5). (*Compl.* at ¶¶ 24–31). The FDCPA provides in pertinent part:

> (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing–
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

*a.  Amount of the Debt*

Plaintiffs assert the dunning letters contained the principal amount of the debt, but also indicated Plaintiffs were liable for interest, court costs and attorney's fees without specifying the

---

[3]To this end, the Court may consider the dunning letters sent to Plaintiffs by Defendant because Plaintiffs' claims arise out of the letters, Plaintiffs alleged the contents of the letters in their respective complaints, and Defendant has not objected to the authenticity of the letters. (*Def.'s Mot. to Dismiss*, Ex. A.)

1 amount of these additional costs. Plaintiffs argue this constituted an inadequate statement of "the
2 amount of the debt" under 15 U.S.C. §1692g(a)(1). Defendant asserts it was willing to accept
3 payment of the principal amount of the claim as payment in full, therefore, it fully complied with the
4 FDCPA requirement. (*Def.'s Mot. to Dismiss* at 4:8–22.)

5       Defendant's assertion is not supported by the plain language of the dunning letter. When
6 evaluating potentially deceptive language, the Ninth Circuit requires courts to judge the language
7 under the "least sophisticated debtor" standard. *Baker v. G.C. Services Corp.*, 677 F.2d 775, 778 (9th
8 Cir. 1982). "Section 1962g(a)(1) requires debt collectors 'to state the total amount due - interest and
9 other charges as well as principal - on the date the dunning letter was sent.'" *Dupuy v. Weltman*, 442
10 F. Supp. 2d 822, 827 (N.D. Cal. 2006) (quoting *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols,*
11 *and Clark, L.L.C.* 214 F.3d 872, 875 (7th Cir. 2000)). Here, Defendant asserts that it was willing to
12 accept payment of the principal amount of the claim as payment in full. However, the letter does not
13 indicate payment of the principal amount alone would satisfy the debt. Specifically, the letter states
14 the principal amount of the claim and then immediately thereafter states in pertinent part:
15 "AMBULATORY CARE SURGERY CENTER has retained me to collect your outstanding balance,
16 interest at the legal rate, and reimbursement of court costs related to your past-due account for medical
17 services rendered." (*Def.'s Mot. to Dismiss*, Ex. A.) The plain language of the letter would lead the
18 least sophisticated debtor to believe he could only satisfy the debt by paying these costs, in addition
19 to the principal amount of the claim. Plaintiffs sufficiently alleged Defendant failed to include the
20 specific amounts of these additional costs. *See Miller*, 214 F.3d at 875; *Dupuy*, 442 F. Supp. 2d at
21 827. *See also Valdez v. Hunt*, 2002 U.S. Dist. LEXIS 4575, at *7 (D. Haw. Mar. 19, 2002) (finding
22 *Miller* inapplicable because the letter at issue included the exact amount of the debt and the extra
23 charges). Accordingly, Defendant has not shown it is entitled to dismissal of Plaintiffs' claims to the
24 extent such claims are based on the manner in which Defendant disclosed the amount of the debt in
25 the dunning letters.

26     b.   *Manner in which Debtor must dispute the debt*
27       Plaintiffs also allege Defendant violated 15 U.S.C. § 1692g(a)(4) and (a)(5) by failing to
28 inform them that any dispute of the debt should be in writing. "[The FDCPA] assigns lesser rights to

debtors who orally dispute a debt and greater rights to debtors who dispute it in writing." *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005). Defendant argues the Ninth Circuit specifically held in *Camacho* that "verification notices need not state that the consumer must use a writing to raise a dispute that overcomes the [§ 1692g(a)(3)] assumption by the debt collector that the debt is valid." (*Def.'s Mot. to Dismiss* at 3:21–4:7.) While Defendant is correct that the notice did not inform Plaintiffs they could only use a writing to dispute the (a)(3) assumption, this argument misses the point. Plaintiffs have sufficiently alleged Defendant failed to comply with § 1692(a)(4) and (a)(5) because the dunning letters did not inform Plaintiffs that their entitlement to verification of the debt under (a)(4), as well as their right to the name and address of the original creditor under (a)(5), was contingent on the submission of their disputes in writing. (*Def.'s Mot. to Dismiss*, Ex. A.) As the Ninth Circuit in *Camacho* noted, "The plain meaning of § 1692g is that debtors can trigger the rights under subsection (a)(3) by either an oral or written 'dispute,' while debtors can trigger the rights under subsections (a)(4) and (a)(5) only through written dispute." 430 F.3d at 1081. Here the statutory language plainly requires the notice inform debtors that disputes under (a)(4) and (a)(5) must be in writing. Accordingly, Plaintiffs have alleged sufficient facts to state a claim under § 1692g.

## II.  Litigation Privilege under Cal. Civ. Code § 47

Defendant argues it is protected by the California litigation privilege because it sent the dunning letter within, or in connection with, judicial proceedings. Cal. Civ. Code § 47. The California litigation privilege protects statements made in any judicial proceeding. Id. The Supreme Court, however, has specifically rejected Defendant's argument. In *Heintz v. Jenkins*, 514 U.S. 291 (1995), the Supreme Court held that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Id.* at 299. The dunning letter sent to Plaintiffs specifically states, "This office is acting as a debt collector. Any information obtained will be used for that purpose." (*Def.'s Mot. to Dismiss*, Ex. A.) Since *Heintz*, many courts within the Ninth Circuit have refused to apply the privilege in cases similar to the one at bar. *Yates v. Allied Int'l Credit Corp.*, 578 F. Supp. 2d 1251, 1255 (S.D. Cal. 2008); *Sial v. Unifund CCR Partners*, 2008 U.S. Dist. LEXIS 66666, at *14–*16 (S.D. Cal. Aug. 28, 2008) (declining to apply the privilege to alleged violations under California's Rosenthal Act). Accordingly, the Court finds ample authority that the

privilege should not be applied to claims arising under the FDCPA or California's Rosenthal Act.

## III.   California's Anti-SLAPP statute

Finally, Defendant submits a special motion to strike under California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16. Defendant contends the dunning letters it sent are protected activity, sent in the course of state court proceedings. California's anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1). The statute sets forth four categories of protected activity, two of which are relevant to the present proceedings:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . .

*Id.* at § 425.16(e). These first two clauses of the anti-SLAPP statute "are coextensive with the Litigation Privilege." *A.F. Brown Electrical Contractor, Inc. v. Rhino Elec. Supply, Inc.*, 137 Cal. App. 4th 1118, 1124 (2006). To satisfy these clauses, Defendant must demonstrate it "made the challenged communications in connection with potential litigation that was given serious consideration and contemplated in good faith." *Id.* at 1123. The mere "threat of potential legal action is insufficient . . . to demonstrate a lawsuit was under serious consideration." *Id.*

To evaluate the anti-SLAPP motion, the Court engages in a two-step inquiry:

> First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds that such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.

*Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). If Defendant fails to meet its initial burden, "the court need not consider whether plaintiff has demonstrated a probability of success before denying" the anti-SLAPP motion. *Rouse v. Law Offices of Rory Clark*, 465 F. Supp. 2d 1031, 1038 (S.D. Cal. 2006)

Other courts have denied anti-SLAPP motions after finding routine debt collection practices are not protected activities. In *A.F. Brown Elec. Contractor*, the California Court of Appeal found a

1  suppliers' filing of stop notice and other collection efforts against an electrical contractor were not
2  protected activities. 137 Cal. App. 4th at 1126. The court reasoned, although the underlying debt may
3  have been pursued in good faith, there was no evidence litigation was under serious consideration.
4  Similarly, in *Rouse v. Law Offices of Rory Clark*, the court found a series of debt collection phone
5  calls, coupled with a default judgment tendered to the County Recorder's Office, were not protected
6  actitivity under the anti-SLAPP statute. 465 F. Supp. 2d at 1038. Furthermore, because Defendant
7  relies on the first clause of the anti-SLAPP statute, the protection is coextensive with the litigation
8  privilege. As previously noted, many courts have found debt collection letters do not fall within the
9  litigation privilege. *See, e.g., Sial v. Unifund*, 2008 U.S. Dist. LEXIS 66666, at *14–*16.

10  Here, Defendant has not shown the disputed debt collection letter was a protected activity.
11  Defendant relies on the bald assertion it sent the letter "in the course of litigation," but fails to submit
12  evidence litigation was under serious consideration. The mere sending of a debt collection letter,
13  without more, does not invoke anti-SLAPP protection. Thus, the Court finds Defendant fails to satisfy
14  the first prong of the anti-SLAPP inquiry. Moreover, as discussed above, Plaintiffs have demonstrated
15  a probability of success on the merits. The Court finds this litigation does not violate California's
16  anti-SLAPP statute.

### Conclusion

18  For the foregoing reasons, the Court **DENIES** Defendant's motions to dismiss the complaints
19  filed by Plaintiffs Erica Welker and Shannon Curiel.[4] Because the Court has denied Defendant's
20  motions to dismiss, the Court also **DENIES** Defendant's request for attorneys' fees and costs.

21  **IT IS SO ORDERED.**

23  DATED: **June 16, 2009**

*[signature]*
IRMA E. GONZALEZ, Chief Judge
United States District Court

---

[4] In Defendant's reply briefs, Defendant asserts that the Rosenthal Act does not apply to attorneys. Because this argument was not raised in the initial motions, the Court did not consider it. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).