John A. Mayers, Esq. (CSB #149149)
MULVANEY, KAHAN & BARRY LLP
401 West A Street, 17th Floor
San Diego, CA 92101-7994
Telephone: 619 238-1010
Facsimile: 619 238-1981
Email: jmayers@mkblaw.com

Attorneys for Defendant LAW OFFICE OF
DANIEL J. HORWITZ

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA WELKER<br><br>Plaintiff,<br><br>v.<br><br>LAW OFFICE OF DANIEL J. HORWITZ,<br><br>Defendant. | CASE NO. 08-CV-2259-IEG-WMc<br><br>DECLARATION OF JOHN A. MAYERS IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>Date:  March 22, 2010<br>Time:  8:30 a.m.<br>Crtrm:  1, 4th Floor<br><br>Honorable Irma E. Gonzalez |

I, JOHN A. MAYERS, declare as follows:

1.    I am an attorney at law duly licensed to practice before the courts of the State of California, and am attorney of record for defendant LAW OFFICE OF DANIEL J. HORWITZ, herein.  I am over the age of eighteen years and if called as a witness, I could and would competently testify to the following facts.

2.    In the course of this action, I caused to be served on Plaintiff WELKER certain discovery. The Requests for Admissions served are lodged herewith as exhibit "O." The responses to those Requests for Admissions are lodged herewith as exhibit "P."  Special Interrogatories served on Plaintiff are lodged as exhibit "Q.". The responses to those Special Interrogatories are lodged herewith as exhibit "R."

3.    Attached hereto as Exhibit "O" and incorporated herein by reference is a true and correct copy of Plaintiff's responses to Horwitz's Special Interrogatories.

1

Case 3:08-cv-02259-IEG -WMC   Document 37-3   Filed 03/08/10   Page 2 of 40

1 Exhibit "O" also contains a direct reprint of Special Interrogatories.

2     4.    Attached hereto as Exhibit "P" and incorporated herein by reference is

3 a true and correct copy of the unpublished case entitled *Rie v. Rosen,* 2005 WL

4 39866 (2nd Dist. 2005).

5     5.    Attached hereto as Exhibit "Q" and incorporated herein by reference is

6 a true and correct copy of the unpublished case entitled *Cassady v. Union*

7 *Adjustment Co.,* 2008 WL 4773976 (N.D. Cal. 2008).

8     6.    Attached hereto as Exhibit "R" and incorporated herein by reference is

9 a true and correct copy of the unpublished case entitled *Purnell v. Arrow Financial*

10 *Services, L.L.C.,* 2007 WL 1840057 (E.D. Mich. 2007).

11     7.    Attached hereto as Exhibit "S" and incorporated herein by reference is

12 a true and correct copy of the unpublished case entitled *Hernandez v. Affiliated*

13 *Group, Inc.,* 2006 WL 83474 (E.D.N.Y. 2006).

14     I declare under penalty of perjury under the laws of the State of California that

15 the foregoing is true and correct, and that this document was executed on March 8,

16 2010.

17                                   */s/ John A. Mayers, Esq.*

18                                   JOHN A. MAYERS, ESQ.

19 HORD.101.219876.1

20

21

22

23

24

25

26

27

28

LAW OFFICES
MULVANEY, KAHAN & BARRY
A LIMITED LIABILITY PARTNERSHIP
SEVENTEENTH FLOOR
401 WEST A STREET
SAN DIEGO, CALIFORNIA 92101-7944
TELEPHONE 619 238-1010
FACSIMILE 619 238-1981

2

DECLARATION OF JOHN A. MAYERS IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT                    08-CV-2259-IEG-WMc

Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Robert L. Hyde, Esq. (SBN: 27183)
bob@westcoastlitigation.com
**Hyde & Swigart**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone:  (619) 233-7770
Facsimile:  (619) 297-1022


Attorneys for Plaintiff


# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| Erica Welker, | Case No.: 08-CV-2259 IEG (WMc) |
|---|---|
| Plaintiff, | **PLAINTIFF'S RESPONSE TO DEFENDANT LAW OFFICE OF DANIEL J. HORWITZ'S SPECIAL INTERROGATORIES, SET ONE** |
| v. | |
| Law Office of Daniel J. Horwitz, | |
| Defendant. | |

PROPOUNDING PARTY:    **LAW OFFICE OF DANIEL J. HORWITZ**

SET NO.:    **ONE**

RESPONDING PARTY:    **PLAINTIFF,  ERICA WELKER**

**TO DEFENDANT LAW OFFICE OF DANIEL J. HORWITZ, AND ITS ATTORNEYS OF RECORD:**

**COMES NOW** Plaintiff, **ERICA WELKER**, by and through counsel, and pursuant to Rules 26, and 33 of the Federal Rules of Civil Procedure and

**EXHIBIT O**

PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF SROGS                    1 OF 14

hereby responds as follows to Defendant **LAW OFFICE OF DANIEL J. HORWITZ'S** SPECIAL INTERROGATORIES to Plaintiff, heretofore filed in this case, without in any way waiving or intending to waive, but on the contrary intending to reserve and reserving:

(a) All questions and objections as to competency, relevancy, materiality, privilege admissibility as evidence for any purpose in any subsequent proceeding in, or the hearing of this action, of any of these answers or the subject matter thereof;

(b) The right to object to the use of any of said answers, or the subject matter thereof, in any subsequent proceeding, in or the hearing of this action, on any grounds;

(c) The right to object on any grounds or at any time to demand for further response to these or other discovery documents or other discovery procedures involved or related to the subject matter of the requests for admissions herein answered; and

(d) The right at any time, to revise, correct, add to or clarify any of said answers propounded herein.

## PRELIMINARY STATEMENT

1. Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

2. By making the accompanying responses and these objections to Defendant's Interrogatories, Plaintiff does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further,

**EXHIBIT O**

Plaintiff makes the responses and objections herein without in any way implying that it considers the requests or responses thereto to be relevant or material to the subject matter of this action.

3.   Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

4.   Publicly available information including, but not limited to, information from newspaper clippings, court papers, information available on the Internet, and other such information that is equally available to both parties will not be produced.

## GENERAL OBJECTIONS

1.   Plaintiff objects to each instruction, definition, and Interrogatory to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2.   Plaintiff objects to each Interrogatory that is overly broad, unduly burdensome, vague and ambiguous or not reasonably calculated to lead to the discovery of admissible evidence.

3.   Plaintiff objects to each definition, instruction, and Interrogatory, to the extent that it seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Should any such disclosure by Plaintiff occur, it is inadvertent and shall not constitute a waiver of any privilege.

4.   Plaintiff objects to each definition, instruction, and Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is readily or more accessible to Defendant from Defendant's own files or documents that Plaintiff previously produced to Defendant. Responding to

**EXHIBIT O**

HYDE & SWIGART
San Diego, California

such Interrogatories would be oppressive, unduly burdensome and unnecessarily expensive, and the burden of responding to such requests is substantially the same or less for Defendant as for Plaintiff. This objection encompasses, but is not limited to, documents and information previously produced by Plaintiff to Defendant, and all correspondence between the Plaintiff and Defendant. All such documents and information will not be produced.

5.   Plaintiff incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Plaintiff does not waive its right to amend its responses.

## SPECIAL INTERROGATORIES

**SPECIAL INTERROGATORY NO. 1:**

IDENTIFY each PERSON who prepared or assisted in the preparation of the responses to these interrogatories.

**RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

Plaintiff and Plaintiff's counsel, Joshua B. Swigart.

**SPECIAL INTERROGATORY NO. 2:**

IDENTIFY any and each PERSON who has knowledge of any facts alleged in and/or supporting the facts alleged by Plaintiff in the COMPLAINT.

**RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

1.   Plaintiff. May be contacted through Plaintiff's counsel

2.   Defendant, Daniel Horwitz.

Discovery is ongoing. Accordingly Plaintiff reserves the right to supplement this response if additional information becomes available.

**EXHIBIT O**

3.    Shannon Curiel. May be contacted through Plaintiff's counsel.

**SPECIAL INTERROGATORY NO. 3:**

IDENTIFY any and each DOCUMENT supporting any and each of YOUR claims set forth in YOUR complaint.

**RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

1. The collection letter sent by Defendant to Plaintiff dated October 2, 2008.

Discovery is ongoing. Accordingly Plaintiff reserves the right to supplement this response if additional information becomes available.

**SPECIAL INTERROGATORY NO. 4:**

IDENTIFY any and each written or otherwise recorded statement relating to the alleged INCIDENT

**RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

Plaintiff's claims surround the sending of the collection letter dated October 2, 2008.  Plaintiff has no written or recorded statements.

Discovery is ongoing. Accordingly Plaintiff reserves the right to supplement this response if additional information becomes available.

**SPECIAL INTERROGATORY NO. 5:**

IDENTIFY any and each PERSON who witnessed the alleged INCIDENT.

**RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

1.    Plaintiff, who may be contacted through Plaintiff's counsel;

2.    Defendant.

Discovery is ongoing. Accordingly Plaintiff reserves the right to supplement this response if additional information becomes available.

//

//

**EXHIBIT O**

**SPECIAL INTERROGATORY NO. 6:**

IDENTIFY any and each PERSON living in your household between January 1, 2008 and today.

**RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

Objection.   This Interrogatory is not reasonably calculated to lead to admissible evidence.    Plaintiff's only claim surrounds the sending by Defendant of the collection letter dated October 2, 2008 to Plaintiff.    Information surrounding Plaintiff's family members is irrelevant to Plaintiff's claim and/or Defendant's defenses.

**SPECIAL INTERROGATORY NO. 7:**

IDENTIFY any and each PERSON who made any statement regarding the alleged INCIDENT.

**RESPONSE TO SPECIAL INTERROGATORY NO. 7:**

Plaintiff is unaware of anyone who made any statements concerning the alleged incident.

Discovery is ongoing. Accordingly Plaintiff reserves the right to supplement this response if additional information becomes available.

**SPECIAL INTERROGATORY NO. 8:**

IDENTIFY any and each INTERVIEW that YOU or anyone acting on YOUR behalf conducted concerning the alleged INCIDENT.

**RESPONSE TO SPECIAL INTERROGATORY NO. 8:**

Objection.  This Interrogatory calls for attorney client communications and/ or attorney work product.  On those grounds, Plaintiff will not provide a response disclosing those privileged communications.  Notwithstanding those objections and without waving such, Plaintiff responds as follows:

1. Other than communications which are privileged, Plaintiff did not

**EXHIBIT O**

HYDE & SWIGART
San Diego, California

conduct any interviews.

Discovery is ongoing. Accordingly Plaintiff reserves the right to supplement this response if additional information becomes available.

## SPECIAL INTERROGATORY NO. 9:

IDENTIFY each and any report made by any PERSON concerning the alleged INCIDENT.

## RESPONSE TO SPECIAL INTERROGATORY NO. 9:

Objection. This Interrogatory calls for attorney client communications and/ or attorney work product. On those grounds, Plaintiff will not provide a response disclosing those privileged communications. Notwithstanding those objections and without waving such, Plaintiff responds as follows:

1. No reports were taken of the incident.

Discovery is ongoing. Accordingly Plaintiff reserves the right to supplement this response if additional information becomes available.

## SPECIAL INTERROGATORY NO. 10:

IDENTIFY whether YOU electronically record telephone calls by any means with any debt collectors and what steps are taken to preserve these recordings.

## RESPONSE TO SPECIAL INTERROGATORY NO. 10:

Objection. This Interrogatory is not reasonably calculated to lead to admissible evidence. Plaintiff's only claim surrounds the sending by Defendant of the collection letter dated October 2, 2008 to Plaintiff. Plaintiff is not making a claim surrounding any telephone contacts and no telephone contacts took place between Plaintiff and Defendant.

//

**EXHIBIT O**

**SPECIAL INTERROGATORY NO. 11:**

IDENTIFY and describe with particularity YOUR understanding of any illegal or improper debt collection activities by LAW OFFICE OF DANIEL J. HORWITZ.

**RESPONSE TO SPECIAL INTERROGATORY NO. 11:**

Objection. Objection. This Interrogatory calls for attorney client communications and/or attorney work product. On those grounds, Plaintiff will not provide a response disclosing those privileged communications. This interrogatory also calls for a legal and/or expert opinion. Notwithstanding those objections and without waving such, Plaintiff responds as follows:

1.  Defendant's debt collection letter addressed to Plaintiff, dated October 2, 2008 violates both the FDCPA and RFDCPA. Plaintiff refers Defendant to the Complaint filed in this matter for specific statutory violations as well as the Court's June 16, 2009 Order denying Defendant's Motion to Dismiss.

Discovery is ongoing. Accordingly Plaintiff reserves the right to supplement this response if additional information becomes available.

**SPECIAL INTERROGATORY NO. 12:**

In the form of chronology, IDENTIFY and describe in detail and with particularity, the process, events, and circumstances under which the debt allegedly owed by YOU was collected, identifying all documents relevant to, related to, or reflecting such collection.

**RESPONSE TO SPECIAL INTERROGATORY NO 12:**

Objection. Defendant's Interrogatory is not reasonably calculated to lead to admissible evidence. Plaintiff's only claim concerns the sending of an illegal collection letter dated October 2, 2008. The underlying debt which was attempted to be collected is irrelevant. Notwithstanding those objections, Plaintiff responds as follows:

**EXHIBIT O**

Plaintiff first received contact concerning an alleged account when the alleged debt was assigned to California Account Services.  California Account Services (CAS) contacted Plaintiff by telephone on or about October 17, 2007. The following months CAS continued to contact Plaintiff by telephone despite Plaintiff telling CAS to stop such communications.  Approximately one year later in October 2008 Defendant representing Ambulatory Surgery Center sued Plaintiff in an attempt to collect the alleged debt.

**SPECIAL INTERROGATORY NO. 13:**

IDENTIFY and describe each communication, or attempted communication between YOU and any agent of defendant LAW OFFICE OF DANIEL J. HORWITZ which was made in connection with the collection of the obligation claimed by AMBULATORY CARE SURGERY CENTER by stating the following:

a.   The name of the individual initiating communication;

b.   The name of the person and/or description of the person to whom the communication was directed;

c.   The date and time of the communication;

d.   The method of communication (e-g, letter, phone call, in-person);

e.   A detailed description of the substance of the communication;

f.   Identification of all witnesses to or participants in the communication; and

g.   Any actions taken by YOU as a result of the communication.

**RESPONSE TO SPECIAL INTERROGATORY NO. 13:**

Objection.  This Interrogatory contains impermissible subparts.  This Interrogatory also calls for attorney client communications and/or attorney work product.  On those grounds, Plaintiff will not provide a response disclosing those privileged communications.  Additionally, this Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.  Notwithstanding those

**EXHIBIT O**

objections and without waving such, Plaintiff responds as follows:

The only written communication Plaintiff received from Defendant was a copy of the summons and complaint and a copy of Defendant's collection letter.

**SPECIAL INTERROGATORY NO. 14:**

IDENTIFY and describe each communication, or attempted communication, between YOU and any person other than an agent of defendant LAW OFFICE OF DANIEL J. HORWITZ which was made in connection with the collection of the obligation claimed by AMBULATORY CARE SURGERY CENTER by stating the following:

a.   The name of the individual initiating communication;

b.   The name of the person and/or description of the person to whom the communication was directed;

c.   The date and time of the communication;

d.   The method of communication (e-g, letter, phone call, in-person);

e.   A detailed description of the substance of the communication;

f.   Identification of all witnesses to or participants in the communication; and

g.   Any actions taken by YOU as a result of the communication.

**RESPONSE TO SPECIAL INTERROGATORY NO. 14:**

Objection. This Interrogatory contains impermissible subparts. This Interrogatory also calls for attorney client communications and/or attorney work product. On those grounds, Plaintiff will not provide a response disclosing those privileged communications. Additionally, this Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's only claims concern the October 2, 2008 letter to Plaintiff by Defendant, which violate both State and federal law.

Without waiving said objections, see documents produced in response to Defendant's document request as it provides a timeline of events.

**EXHIBIT O**

**SPECIAL INTERROGATORY NO. 15:**

IDENTIFY each collection representative, debt collector and/or agent who attempted to collect the alleged debt underlying this action from YOU.

**RESPONSE TO SPECIAL INTERROGATORY NO. 15:**

1.  Daniel J. Horwitz;

2.  Law Office of Daniel J. Horwitz;

3.  California Account Services.

Discovery is ongoing. Accordingly Plaintiff reserves the right to supplement this response if additional information becomes available.

**SPECIAL INTERROGATORY NO. 16:**

Regarding claim in Paragraph No. 24 of YOUR complaint, please state the following

a.   Any and all facts supporting this claim;

b.   IDENTIFY all DOCUMENTS that support this claim;

c.   IDENTIFY all WITNESSES who have knowledge of the facts and/or documents that support YOUR claim.

**RESPONSE TO SPECIAL INTERROGATORY NO. 16:**

Objection. This Interrogatory contains impermissible subparts.  This Interrogatory also calls for attorney client communications and/or attorney work product.  On those grounds, Plaintiff will not provide a response disclosing those privileged communications.  Additionally, this Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.  Notwithstanding those objections and without waving such, Plaintiff responds as follows:

Plaintiff received Defendant's collection letter dated October 2, 2008 when Plaintiff was served with a lawsuit filed by Defendant.  Both Plaintiff and Defendant have information surrounding the delivery and receipt of this letter.

Discovery is ongoing. Accordingly Plaintiff reserves the right to supplement

**EXHIBIT O**

HYDE & SWIGART
San Diego, California

this response if additional information becomes available.

**SPECIAL INTERROGATORY NO. 17:**

Regarding claim in Paragraph No. 29 of YOUR complaint, please state the following:

a.     Any and all facts supporting this claim;

b.     IDENTIFY all DOCUMENTS that support this claim;

c.     IDENTIFY all WITNESSES who have knowledge of the facts and/or documents that support YOUR claim.

**RESPONSE TO SPECIAL INTERROGATORY NO. 17:**

Objection. This Interrogatory contains impermissible subparts. This Interrogatory also calls for attorney client communications and/or attorney work product. On those grounds, Plaintiff will not provide a response disclosing those privileged communications. This Interrogatory calls for a legal conclusion. Notwithstanding those objections and without waving such, Plaintiff responds as follows:

Plaintiff received Defendant's collection letter dated October 2, 2008 when Plaintiff was served with a lawsuit filed by Defendant. Both Plaintiff and Defendant have information surrounding the delivery and receipt of this letter. This letter fails to provide the proper notices under the Fair Debt Collection Practices Act, specifically 15 U.S.C. § 1692g.

Discovery is ongoing. Accordingly Plaintiff reserves the right to supplement this response if additional information becomes available.

**SPECIAL INTERROGATORY NO. 18:**

If YOU contend that LAW OFFICE OF DANIEL J. HORWITZ is a "law firm" please provide:

a.     Any and all facts supporting this claim;

**EXHIBIT O**

b.   DENTIFY [SIC] all DOCUMENTS that support this claim;

c.   IDENTIFY all WITNESSES who have knowledge of the facts and/or documents that support YOUR claim.

**RESPONSE TO SPECIAL INTERROGATORY NO. 18:**

Objection. This Interrogatory contains impermissible subparts. This Interrogatory also calls for attorney client communications and/or attorney work product. On those grounds, Plaintiff will not provide a response disclosing those privileged communications. This Interrogatory calls for a legal conclusion. Notwithstanding those objections and without waving such, Plaintiff responds as follows:

Plaintiff received Defendant's collection letter dated October 2, 2008 when Plaintiff was served with a lawsuit filed by Defendant. Defendant holds himself out as a law firm.


**SPECIAL INTERROGATORY NO. 19:**

If YOU contend that LAW OFFICE OF DANIEL J. HORWITZ is a designation of a different entity than attorney Daniel J. Horwitz, please provide:

a.   Any and all facts supporting this claim;

b.   IDENTIFY all DOCUMENTS that support this claim;

c.   IDENTIFY all WITNESSES who have knowledge of the facts and/or documents that support YOUR claim.

**RESPONSE TO SPECIAL INTERROGATORY NO. 19:**

Objection. This Interrogatory contains impermissible subparts. This Interrogatory also calls for attorney client communications and/or attorney work product. On those grounds, Plaintiff will not provide a response disclosing those privileged communications. This Interrogatory calls for a legal conclusion. Notwithstanding those objections and without waving such, Plaintiff responds as follows:

**EXHIBIT O**

1

2   Plaintiff received Defendant's collection letter dated October 2, 2008 when

3   Plaintiff was served with a lawsuit filed by Defendant.  Defendant holds himself

    out as a law firm.
4

5
    Dated: February 3, 2010                        **Hyde & Swigart**
6

7

8                                       By: _____
                                            Joshua B. Swigart
9                                           Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Westlaw.

Not Reported in Cal.Rptr.3d, 2005 WL 39866 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2005 WL 39866 (Cal.App. 2 Dist.))**

► Only the Westlaw citation is currently available.

California Rules of Court, rule 8.1115, restricts cita-
tion of unpublished opinions in California courts.

Court of Appeal, Second District, Division 4, Cali-
fornia.
Jin RIE et al., Plaintiffs and Appellants,
v.
Alan L. ROSEN et al., Defendants and Respondents.
**No. B169669.**
**(Los Angeles County Super. Ct. No. BC275364).**

Jan. 10, 2005.

APPEAL from a judgment of the Superior Court of
Los Angeles County, Ernest Hiroshige, Judge. Af-
firmed.
Jin Rie, in pro. per., and for Plaintiffs and Appellants.

Rosen and Loeb and Alan L. Rosen for Defendants
and Respondents.

CURRY, J.

## FACTUAL AND PROCEDURAL BACK-GROUND

**\*1** In 1992, appellants Jin and Cheon Rie,[FN1] husband
and wife, purchased property from Asadur and Petra
Tursugian who held back a second deed of trust. In
1999, the Tursugians foreclosed on the deed of trust.
The Ries filed a lawsuit against the Tursugians, their
attorney Alan Rosen, his law firm-the Law Offices of
Rosen and Loeb,[FN2] and the company that had han-
dled the foreclosure, SBS Trust Deed Network
(SBS).

> FN1. References to "Rie" herein are to Jin
> Rie. Appellants will jointly be referred to as
> "the Ries."

> FN2. Rosen and his firm are jointly referred
> to herein as Rosen.

*First Amended Complaint*

The original complaint is not in our record, although
the parties and the court indicated it was filed on June
7, 2002. The first amended complaint (FAC) alleged
that the Tursugians held a second deed of trust on the
Ries' property in the original amount of approxi-
mately $42,000. In 1997, the parties "entered into a
written agreement ... whereby [the Ries] were to re-
pay [the loan] in monthly payments of $4,000." The
Ries performed that agreement until the latter part of
1998, at which time the parties allegedly reached a
new arrangement.

The FAC further alleged that "during the period from
1997 through December 1998 and June 1999, Tursu-
gians on several occasion agreed to accept partial
payments from [the Ries] on the balance of the note."
But when partial payments were tendered, the Tursu-
gians rejected them. Instead, the Tursugians, through
their lawyer Rosen, "claimed to have given notice in
January 1999 of the balloon payment" which the Ries
denied receiving, and "attempted to back-date notices
of balloon payments in order to demonstrate compli-
ance with the 90-day advance notice requirement of
[Civil Code section 2966]." [FN3] The FAC said the
Ries did not receive the section 2966 notice until
April 1999.

> FN3. As will be discussed, section 2966 re-
> quires holders of notes with balloon pay-
> ments to provide written notice by certified
> mail of when the payment is due. The notice
> at issue in this case will be referred to herein
> as "the section 2966 notice."

A notice of default was served in May 1999. The
FAC claimed that the notice of default was defective
because it contained "amounts due, interest due, and
other items for which there [was] no explanation nor
reasonable calculations." The FAC also alleged that
no notice of foreclosure sale was ever received by the
Ries, and they did not learn about the September 17,
1999, sale of the property until sometime after it oc-
curred.

According to the FAC, the property was purchased
by 6 Angels, Inc. In December 1999, the holder of

**EXHIBIT P**

Not Reported in Cal.Rptr.3d, 2005 WL 39866 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2005 WL 39866 (Cal.App. 2 Dist.))**

the first trust deed foreclosed, and the Ries reacquired the property by paying off 6 Angels and the first trust deed lender.

The FAC contained eight causes of action. The first cause of action was for wrongful foreclosure and was brought against all defendants, including nonrespondent SBS. It alleged that defendants failed to carry out foreclosure proceedings properly in that they "failed to rely on proper notices of balloon payments as required by Civil Code § 2966, failed to allow the requisite time required under the code for payment of such balloon payment demand, failed to serve a notice of default after the expiration of such time, failed to file a notice of default that accurately and correctly stated the terms of the loan and the deficiency, failed to account for the agreements reached between the Tursugians and [the Ries] in resolving the modest amount of payments remaining on the Second Trust Deed, and failed to properly notice and serve a Notice of Sale as required by the Code."

*2 The second cause of action for breach of contract was alleged against respondents Rosen and the Tursugians only. The FAC alleged that the parties entered into a written agreement with the Tursugians whereby the Ries were to repay the loan in monthly payments of $4,000. The Ries "honored and performed said agreement at all times until the latter part of 1998, whereupon the parties reached a new arrangement concerning the payments of the unpaid principal [of $13,000]." Attached as an exhibit to the FAC was a letter to Rie dated December 10, 1998, which stated: "I am in receipt of your letter and check ... in the amount of $292.00. Enclosed please find above said check. You have failed twice to repay this debt as scheduled and agreed upon. Your claim in regards to the roof is ludicrous. I will not forgive $2,000 of the debt owed to me as I am sure that the statute of limitations has passed long ago. I demand payment in full or continuance of your monthly payment of $4000.00. These are the only two options I will agree to. If you do not comply I will have no choice but to begin forclosure [*sic* ] proceedings. I will await your prompt response. I will allow you 15 days to respond." The letter was unsigned, and was said to represent "the written portion" of the parties' agreement.

In the third cause of action for misrepresentation, the Ries alleged that respondents made "numerous repre-

sentations" concerning "the terms under which [they] would accept payments on the balance of the Note ..., the time frames under which they would accept such payments, the circumstances under which [the Ries] would lose or forego their rights, ... falsified the dates that certain critical events took place in order to deprive [the Ries] of certain statutory rights[, and] ... failed to properly provide notice to [the Ries] and intentionally and harmfully withheld such information from [the Ries]."

The fourth cause of action for unfair debt collection practices alleged that respondents violated the "Fair Debt Collection Act" [FN4] by making misrepresentations and false promises, and by keeping critical information from the Ries. It further alleged that respondents "use[d] false information, fabricat[ed] notices that were never sent, [and] enter[ed] into agreements with [the Ries] and thereafter reject[ed] payments made pursuant to such agreements."

> FN4. This may be an attempted reference to the Robbins-Rosenthal Fair Debt Collection Practices Act, Civil Code section 1788 et. seq. That provision, however, applied only to those who, "in the ordinary course of business, regularly on behalf of himself or herself or others, engages in debt collection" and does not apply to "an attorney or counselor at law." (Civ.Code, § 1788.2, subd. (c).)

The fifth cause of action for fraud alleged that respondents deceived the Ries about reaching an arrangement on the note "in order to fraudulently force the property into foreclosure."

The sixth cause of action alleged that all defendants, including SBS, entered into a conspiracy in order to deprive the Ries of their valuable property in order to collect a debt of $13,000.

The seventh cause of action for interference with economic relations alleged that respondents interfered with the Ries' relationship with the Bank of America in order "to convince Bank of America to abandon [the Ries'] line of credit" by "contact[ing] the [Ries] and sen[ding] letters claiming that [the Ries] should repay [their] existing line of credit in full to Bank of America."

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT P**

Not Reported in Cal.Rptr.3d, 2005 WL 39866 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2005 WL 39866 (Cal.App. 2 Dist.))**

**\*3** In the eighth cause of action for breach of fiduciary duty against all defendants, the Ries alleged that defendants breached duties owed under the deed of trust.

*Demurrer to First Amended Complaint*

Respondents demurred, requesting that the court take judicial notice of a verified complaint in a prior action initiated by Rie,[FN5] which contained the following statement: "[I]t was not until January 7, 1999 that defendant Tursugian served the required Notice." [FN6]

> FN5. The Ries, while represented by Attorney Ron Galperin, had filed an earlier action, *Rie v. 6 Angels, Inc.* (Super.Ct.L.A.County, No. BC223268), in which 6 Angels, the purchaser of the real property at the foreclosure sale, and the Tursugians were named defendants. The complaint in that action contained similar allegations of fraud and breach of contract.

> FN6. The memorandum in support of respondents' demurrer is not in our record. The above was quoted in the court's order.

The court sustained without leave to amend with respect to the causes of action for wrongful foreclosure, breach of contract, and conspiracy. Concerning the wrongful foreclosure claim, the court accepted as true that the section 2966 notice was served on January 7, 1999, as stated in the *Rie v. 6 Angels* action, noting that nowhere in the verified complaint in that action was there an allegation that the notice was not received by the Ries. In addition, the court stated that the Ries' allegations that they did not receive the notice were "irrelevant" because: "[The Ries] were nevertheless required to make the balloon payment by 4/15/99. Civil Code § 2966(b) provides any failure to provide notice of a due balloon payment as required by that section does not extinguish a trustor's obligation to make payments on a note, 'except that the due date for any balloon payment shall be the date specified in the note, or 90 days from the date the delivery or mailing of the notice, or the date specified in the notice, whichever date is later .' [The Tursugians] served notice of the due balloon payment on 1/7/99. [The Ries] were thus required to make the balloon payment on 4/15/99, since it was a later date than the date 90 days after the notice was mailed. Having

failed to make that payment, [the Ries'] claim of wrongful foreclosure is without merit."

The court concluded that the breach of contract claim was "defective" because the written document attached to the complaint was contradictory to other allegations that indicated that some compromise other than continued payment of $4,000 per month or immediate payment of the balance had been reached. In addition, the author of the document was not identified in the FAC, and it was not signed.

As to the third cause of action for misrepresentation, the court rejected a statute of limitations defense, stating: "[The Ries] allege that they did not learn of the foreclosure sale until after 9/17/99 and did not receive the notice of balloon payment or notice of default. Accordingly there is nothing to indicate that they should have known before 9/17/99 of their being harmed by [respondents'] alleged intentional misrepresentations." The court further ruled that "the allegations are sufficient to apprise [respondents] of the claims being made against them." The court tentatively granted the demurrer without leave to amend as to the fifth cause of action for fraud on the ground that it was duplicative of the third cause of action for misrepresentation. In its final order, however, the Ries were given permission to amend the third and fifth causes of action to clarify that the former was for intentional misrepresentation and the latter for negligent misrepresentation.

**\*4** The court stated concerning the fourth (unfair collection practices) cause of action that "the allegations that [the Ries] never received notice of balloon payment and the allegations of an agreement made on or about December 1998 or January 1999 are contradicted or unsupported and therefore cannot form the basis of a claim for unfair debt collection practices." The contention that respondents "us[ed] false information" was "vague." The demurrer was sustained with leave to amend.

Demurrer was sustained to the sixth cause of action for conspiracy with leave to amend because it was based on the theory of wrongful foreclosure to which demurrer had been sustained. No reference was made in the court's order to the seventh cause of action for intentional interference.

The court's order categorized the demurrer to the

**EXHIBIT P**

Not Reported in Cal.Rptr.3d, 2005 WL 39866 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2005 WL 39866 (Cal.App. 2 Dist.))**

eighth cause of action for breach of fiduciary duty as "overruled." However, the order clarified: "The Tursugians were the beneficiaries under the trust deed. Rosen and Rosen and Loeb were their attorneys and neither trustees nor beneficiaries under the trust deed. [The Ries] fail to indicate how [respondents] owed them a fiduciary duty. However, SBS Trust Deed Network is alleged to have failed to insure proper compliance with the state foreclosure laws."

*Second Amended Complaint*

The Ries filed a second amended complaint (SAC) in compliance with the trial court's ruling. In the first cause of action for negligent misrepresentation, the SAC alleged that respondents made misrepresentations concerning the terms under which they would accept payment on the note, the time frames under which they would accept payments, and the circumstances under which the Ries would lose or forego their rights. In addition, respondents "falsified the dates that certain critical events took place" and "failed to notify [the Ries] of certain foreclosure proceedings."

In the second cause of action for intentional misrepresentation, the SAC alleged that respondents "fraudulently and intentionally deceived [the Ries] into believing that the parties had reached an arrangement with respect to handling the remaining balance" on the note and "informed [the Ries] that [respondents] would accept certain terms of payment on the promissory note," and then "refused to accept payments in order to fraudulently force the property into foreclosure." The SAC also accused respondents of "fabricat[ing] documents and backdat[ing] them to reflect earlier dates of notices that were never sent on the date proffered."

The third cause of action for interference with prospective economic advantage and the fourth cause of action for breach of fiduciary duty in the SAC were essentially the same as in the FAC, except for being renumbered, and again named all defendants.

*Demurrer to Second Amended Complaint*

Respondents demurred to the entire SAC. With respect to the intentional misrepresentation claim, they alleged that "when the [respondents] served the Balloon Notice on January 7, 1999, the [Ries] knew, or

reasonably should have known, that their cause of action based on fraud had accrued. Since this case was filed on June 7, 2002, any cause of action based on intentional misrepresentation would have expired in January, 2002." With respect to negligent misrepresentation, they raised the statute of limitations defense, and also argued that since the court had found the section 2966 notice had been sent on January 7, 1999, "the foreclosure was judicially determined to be entirely proper," and the Ries could not contend that they suffered any damages as a result of the alleged misrepresentations.

**\*5** This time the court sustained the demurrer without leave to amend as to the first, second, and fourth causes of action for misrepresentation and breach of fiduciary duty. It sustained the demurrer with leave to amend as to the third cause of action for interference with economic relations. The court stated that it sustained the demurrer with respect to the negligent misrepresentation claim because the allegations were vague, the representations alleged appeared to be intentionally rather than negligently made, and the damages alleged were caused by the foreclosure, "a transaction which the court previously found to be proper."

With respect to intentional misrepresentation, the court stated: "In ruling on Defendants' prior demurrer, the court took judicial notice of [the Ries'] verified complaint that was filed in [*Rie v. 6 Angels,*] case BC223268, and the allegations in 20 of that complaint that [the] Tursugians had served notice of the balloon payment on 1/7/99. The court found that this allegation amounted to an admission by [the Ries] that they had received the requisite notice as of 1/7/99." This meant that "[the Ries] knew, or reasonably should have known, as of that date that the defendants' representations regarding the alleged payment arrangement were false and that the defendants did not intend to honor it." Because they filed their complaint on June 7, 2002, the claim is barred by the three-year statute of limitations for intentional fraud. The Ries pointed out that their complaints alleged that respondents made representations concerning partial payments until at least June 1999. The court responded: "This amendment is an impermissible attempt to toll the statue of limitations .... [The Ries] cannot carte blanche amend to get around the statute of limitations without some showing of justification for the material change in factual assertions.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT P**

Not Reported in Cal.Rptr.3d, 2005 WL 39866 (Cal.App. 2 Dist.)
Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)
(Cite as: 2005 WL 39866 (Cal.App. 2 Dist.))

[The Ries] are bound by the contradictory verified complaint in case BC223368 in which notice of the balloon payment on 1/7/99 is binding upon them for the purposes of the statute of limitations analysis as to this cause of action."

The intentional interference cause of action was "unintelligible," according to the court, because it "allege[d] merely conclusions (e.g., 'defendants ... intentionally and deliberately interfered with such economic relations by improperly seeking to defame [the Reis] and subvert Bank of America's policies') and statements whose significance is unclear (e.g., 'defendants ... contacted the [Ries] and sent letters claiming that [the Ries] should repay its existing line of credit in full to Bank of America')." Demurrer was sustained with leave to amend.

Demurrer was sustained in part to the breach of fiduciary cause of action, eliminating respondents only, leaving SBS as a defendant.

*Third Amended Complaint*

The Ries filed the third amended complaint (TAC) without the assistance of counsel. In it, they restated their claims for wrongful foreclosure, negligent misrepresentation, intentional misrepresentation, unfair collection practices, and conspiracy. In the cause of action for intentional interference, new allegations were added concerning respondents' motives, but no new allegations concerning what had been done to interfere. The breach of fiduciary duty cause of action was restated essentially as in the prior pleadings.

*6 Respondents moved in limine for an order excluding all evidence at trial relating to the first, second, third, fifth, and seventh causes of action in the TAC, due to the sustaining of the demurrers without leave as to those causes of action. The motion was granted. The Ries refused to try the case without these claims, and the matter was dismissed. The Ries appealed.

## DISCUSSION

*I*

The Ries' brief begins with a list of facts that they contend require special consideration, e.g., the fact that only around $13,000 was due to the Tursugians

when the foreclosure occurred, a relatively minor amount when compared to the property's worth of $350,000; the fact that the Tursugians were the holders of the second trust deed rather than the first trust deed; the fact that the first trust deed had a balance that constituted two-thirds of the value of the property; the fact that the Tursugians rejected a $4,000 partial payment at least three times; and the fact that foreclosure was consummated to obtain the balance due plus foreclosure expenses. Other than the fact respondents repeatedly rejected the Ries' proffered payments-which, as we will discuss, tends to undermine their claims-these facts have no legal significance. Holders of trust deeds are entitled to utilize nonjudicial foreclosure proceedings to recover their debt even when the amount owed is relatively minor in comparison to the value of the property, and are entitled to their foreclosure expenses. (See *Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1174.)

Nor is there any significance to the fact that, in the *Rie v. 6 Angels* lawsuit,[FN7] the Tursugians' demurrer was overruled. The two lawsuits were similar, but not identical. We note, for example, that the prior complaint was based on the factual allegation that the balloon payment was due in 1993, and that the Tursugians accepted partial payments for six years prior to sending the notice that a balloon payment was due. The present action is based on the balloon payment being due in 1999 and partial payments being repeatedly rejected. In addition, that lawsuit was filed in January 2000, immediately following the events on which it was based, so the statute of limitations was not an issue.

> FN7. For reasons that are not clear, that lawsuit was dismissed-presumably without prejudice or it would have been raised in the current action as res judicata.

The Ries' brief also discusses the hearing on the motion in limine at length. Rie attempted to reargue the viability of causes of action to which demurrers had previously been sustained without leave to amend. He complains that the trial court did not give him a fair hearing. The only issue at that hearing was whether the Ries were prepared to go to trial in the absence of the claims to which demurrers had been sustained. They obviously were not willing to try the case under those conditions, and the entry of dis-

Not Reported in Cal.Rptr.3d, 2005 WL 39866 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2005 WL 39866 (Cal.App. 2 Dist.))**

missal was appropriate.

*II*

*A. Wrongful Foreclosure*

In their brief, the Ries quote the sentence from the verified complaint in *Rie v. 6 Angels* on which the trial court relied in sustaining demurrers to both the wrongful foreclosure and misrepresentation claims: "Although the Notice pursuant to <u>Civil Code 2966</u> was required at the time the note became due in 1993, it was not until January 7, 1999 that Defendant Tursugian served the required Notice." The Ries argue this was an "ambiguous expression," and could reasonably be interpreted to mean that the <u>section 2966</u> notice was served on or after January 7, 1999-or as late as April 1999 when they alleged they finally received the notice. We do not agree that the words can be stretched that far. There is nothing ambiguous about the statement. The clear meaning is that the <u>section 2966</u> notice was served on January 7, 1999.

**\*7** The Ries are on firmer ground when they contend that the trial court expanded the meaning of the statement in the verified complaint by interpreting it to mean not just that the Tursugians served the <u>section 2966</u> notice on January 7, 1999, but that the Ries *received* the notice at around that time. We agree. The quoted statement said that the requisite notice was "served" which under the statute can be accomplished by mailing; nothing was said about receipt. The doctrine of judicial admissions does not allow the court to liberally construe a party's former pleading, and read something into it that is not there.

Although we agree that the court interpreted the statement overbroadly, we do not believe that its misinterpretation had any appreciable impact on its ruling on the wrongful foreclosure claim. As the trial court pointed out in its order, <u>section 2966</u> requires the holder of a note containing a balloon payment to "not less than 90 nor more than 150 days before the balloon payment is due, deliver *or mail* by first-class mail, with certificate of mailing obtained from the United States Postal Service, to the trustor, or his or her successors in interest, at the last known address of such person a written notice" that includes "the date on or before which the balloon payment was or is required to be paid." (§ 2966, subd. (a)(1), italics added.) Although we have found no cases interpret-

ing this provision, the court in <u>*Lupertino v. Carbahal*</u> <u>(1973) 35 Cal.App.3d 742</u> was faced with a similar issue. There, the defaulting buyers had moved without filing a change of address. The trustee mailed a copy of the notice and default and election to sell to the buyers at their former address. It was not delivered. The court ultimately held that because the trustee later learned the correct address, it should have forwarded the notice and was equitably estopped from relying on the notice. But the court also stated: "Deeds of trust are creatures of statute; unless the statutes conflict with constitutional guarantees of due process, statutory procedures delineate the steps which establish jurisdiction and authority for a trustee's sale. [Citations.] A cursory review of <u>Civil Code section 2924</u> evidences a periodic and genuine concern by the Legislature to improve the opportunity for a trustor in default to receive actual notice of default and notice of sale. *We pointedly emphasize, however, that <u>Civil Code sections 2924-2924h,</u> inclusive, do not require actual receipt by a trustor of notice of default or notice of sale.*" (*Id.* at p. 746, italics added; accord, <u>*Knapp v. Doherty* (2004) 123</u> <u>Cal.App.4th 76, 83-89.)</u>

The point made in *Lupertino* is that a debtor should not be able to thwart a nonjudicial foreclosure by the mere expedient of moving and leaving no forwarding address. Similarly, a debtor should not be permitted to delay foreclosure indefinitely by refusing to accept certified mail. The Ries' own allegations make clear that they knew the balloon payment was due. Negotiations with the Tursugians were underway. The admission that the <u>section 2966</u> notice was mailed in January 1999, together with the admissions that the Ries knew the balloon payment was due and that the notice was actually received in April 1999-long before the foreclosure sale took place-leads us to agree with the trial court that the Ries' denial that they received the notice in January was irrelevant.[FN8]

> FN8. The FAC contained allegations that the notice of default, although properly served, contained questionable figures and that no notice of sale was posted. Since neither of these factors are mentioned in the brief on appeal, and no legal authorities are cited concerning who must receive such notice or how it must be given, we assume that the Ries no longer urge these alleged defects as a basis for the wrongful foreclosure claim.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT P**

Not Reported in Cal.Rptr.3d, 2005 WL 39866 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2005 WL 39866 (Cal.App. 2 Dist.))**

In addition, neither party discusses the statute of limitations on an action for wrongful foreclosure or failure to give the section 2966 notice. We note that section 2967 of the Civil Code provides: "Any action arising under this article may be brought within two years from the date on which the liability arises, except that where a material disclosure under this article has been materially and willfully misrepresented, the action may be brought within two years of discovery of the misrepresentation." (See also *Engstrom v. Kallins* (1996) 49 Cal.App.4th 773,783 [applying the three-year statute of limitations contained in Code of Civil Procedure 338, subdivision (a) where the claim was based on failure to give notice to a cosigner, but holding that the statute accrues on the date foreclosure proceedings are instituted or begin rather than when the sale takes place].)

*B. Misrepresentation*

**\*8** Actual receipt of the January 1999 section 2966 notice was also the basis for the court's decision to sustain the demurrer to the intentional misrepresentation cause of action. Before discussing the substance of that claim, we acknowledge a discrepancy in the trial court's orders pointed out in the Ries' brief. In the order ruling on the demurrer to the FAC, the court rejected a statute of limitations defense, stating "[The Ries] allege that they did not learn of the foreclosure sale until after 9/17/99 and did not receive the notice of balloon payment or notice of default.[ FN9] Accordingly, there is nothing to indicate that they should have known before 9/17/99 of their being harmed by [respondents'] alleged intentional misrepresentations. [The Ries]' claim for intentional misrepresentation is timely." On that basis, the demurrer to the intentional misrepresentation claim in the FAC was overruled. Yet in the order ruling on the demurrer to the SAC, the court concluded there was a limitations bar and sustained the demurrer to that claim without leave to amend because "[the Ries] knew, or reasonably should have known, as of [the date of the section 2966 notice] that the [respondents'] representations regarding the alleged payment arrangement were false and that the defendants did not intend to honor

it."

FN9. This is incorrect. In fact, the FAC stated that the notice of default was received in May 1999, but that some of the calculations were difficult to decipher.

As we stated above, we disagree with that aspect of the court's interpretation. The prior pleading did not state that the section 2966 notice was received in January 1999. Moreover, the court erred in essentially reconsidering its prior ruling on the statute of limitations defense without a proper motion for reconsideration having been filed. Having said that, our task is to review the pleadings and determine the validity of the court's actions in sustaining the demurrer, rather than its reasoning, and to affirm whichever of the two discordant orders is legally correct.

The elements of fraud are well known: "(1) representation; (2) falsity; (3) knowledge of falsity; (4) intent to deceive; and (5) reliance and resulting damage (causation)." (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 668, p. 123.) In addition, "[f]raud actions have been classed as 'disfavored,' and are subject to strict requirements of particularity in pleading. The idea seems to be that allegations of fraud involve a serious attack on character, and fairness to the defendant demands that he should receive the fullest possible details of the charge in order to prepare his defense. Accordingly, the rule is everywhere followed that fraud must be specifically pleaded." (*Id.,* § 669, p. 125.) " ' "This particularity requirement necessitates pleading *facts* which 'show how, when, where, to whom, and by what means the representations were tendered.' " ' " ( *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 184, quoting *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.) The Supreme Court in *Small* also made clear that a complaint for negligent misrepresentation should be pled with the same specificity required in an action for fraud. (*Ibid.*)

**\*9** The effect of this rule of specificity is twofold: "(1) General pleading of the legal conclusion of 'fraud' is insufficient; the facts constituting the fraud must be alleged; (2) every element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically), and the policy of liberal construction of the pleadings [citation] will not ordinarily be invoked to sustain a pleading defec-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT P**

Not Reported in Cal.Rptr.3d, 2005 WL 39866 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2005 WL 39866 (Cal.App. 2 Dist.))**

tive in any material respect." (5 Witkin, *supra,* Pleading, § 669, p. 125.)

Nowhere in their pleadings have the Ries specifically stated what representations were made, when, or by whom. The SAC, for example, stated: "[b]etween December 1998 and September 1999, [respondents] and each of them made numerous representations to [the Ries] ... concern[ing] the terms under which [respondents] would accept payment on the balance of the Note ..., the time frames under which they would accept such payments, [and] the circumstances under which [the Ries] would lose or forego their rights." The SAC further alleged in an attempt to be "[s]pecific" that "[respondents] informed [the Ries] that they would accept certain monthly payments, and after [the Ries] paid such sums, [respondents] declined to accept them." All the allegations were vague both as to when statements were made and who made them. The only allegation specific as to content-that one or all of the respondents said that he, she, or they would "accept certain monthly payments"-undercuts any theory of reliance when it goes on to state that such payments were never accepted.

With respect to reliance, causation, and damages, the SAC alleged: "if [the Ries] were aware of the falsity of the representations and actions of [respondents], [the Ries] would not only have taken appropriate precautionary measures, which they did not take, but would have also not obtained funds in an emergency basis, and not allowed their property to fall into foreclosure, damaging their credit, losing income, and harming them financially." The SAC further alleged that damages included "loss of their property, loss of use of their property, loss of earnings, as well as severe emotional distress."

The injuries described are the natural result of the foreclosure, as the trial court stated. The cause of the foreclosure was the Ries' failure to pay the note when it was due. That cannot be blamed on the alleged misrepresentations unless the representations lulled the Ries into inaction. (See *Wanger v. EMC Mortgage Corp.* (2002) 103 Cal.App.4th 1125, 1138 ["The issue of whether or not the foreclosure is included in the actual damages suffered by [plaintiff] will depend upon her showing that the foreclosure occurred 'as a result of the failure' [citation] to deliver the notice of transfer"].) The allegations attempt to make this connection, yet, other allegations in the SAC undercut

the existence of any causal connection. The Ries admitted that they received a December 1998 letter warning them that in the absence of payment in full or continuance of $4,000 monthly payments, foreclosure proceedings would begin; that every proffered payment was returned; that they were contacted by the Tursugians' counsel in April 1999, who forwarded them a copy of the section 2966 notice dated January 7, 1999; and that they received a notice of default in May 1999.[FN10] Certainly by May 1999, any reasonable person would have realized that the Tursugians fully intended to go forward with the foreclosure. Unless there was a specific misrepresentation made after that time-and no such allegation appears in the SAC-the trial court was correct to sustain the demurrer on statute of limitations grounds and should also have sustained it on grounds of lack of specificity.

> FN10. The Ries disputed the amount stated in the notice of default, but there is no contention that they tendered that amount or any lesser amount that they believed to be due to the Tursugians. The only specific reference to a tender of any type states that "[I]n or about January 1999, [the Ries] tendered payment of approximately $4,756 which Tursugians improperly rejected."

**\*10** The same is true of the allegations regarding alleged falsification of the date of the notice and failure to provide notice. The Ries knew by April 1999 that the Tursugians were alleging that the section 2966 notice was served in January 1999. The complaint was filed more than three years later. This was beyond the three-year statute of limitations applicable to fraud.

*C. Breach of Contract*

The trial court sustained the demurrer to the breach of contract claim because the handwritten letter attached to the complaint that was purported to be the "written portion" of the parties' agreement was contradicted by other allegations that indicated that some compromise other than continued payment of $4,000 per month or immediate payment of the balance was reached. In addition, the author of the document was not identified in the FAC, and it was not signed.

We agree with the trial court. Proper statement of a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT P**

Not Reported in Cal.Rptr.3d, 2005 WL 39866 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2005 WL 39866 (Cal.App. 2 Dist.))**

breach of contract claim requires allegations of: "(a) the contract [citation]; (b) plaintiff's performance or excuse for nonperformance [citation]; (c) defendant's breach [citation]; and (d) damage to plaintiff [citation]." (4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 476, p. 570.) "A written contract is usually pleaded by alleging its making and then setting it out verbatim ... in the body of the complaint or as a copy attached and incorporated by reference." (*Id.,* § 479, p. 572.) Alternatively, it can be pled according to its legal effect. (*Id.,* § 480, p. 573.) "This is more difficult, for it requires careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions, and it involves the danger of variance where the instrument proved differs from that alleged[.]" (*Ibid.*) An "oral contract is pleaded according to its legal effect." (*Id.,* § 483, p. 575.) "In order to avoid a special demurrer, it is necessary to specify that the contract is written, oral, or implied by conduct." (*Id.,* p. 574.) In addition, "the allegation of performance is an essential part of [the plaintiff's] cause of action." (*Id.,* § 491, p. 582.)

The FAC alleged that after the Ries stopped performing the parties' 1997 agreement, "in or about December 1998 and January 1999, [respondents] agreed in writing and confirmed orally to allow [the Ries] additional time to make the monthly payments, and forego any balloon payments" and that the "written portion of said agreement" was attached. But the December 1998 document can only be seen as an offer rather than a contract. It clearly stated that no portion of the debt would be forgiven, that the only two acceptable options were payment of the balance or continuance of monthly payments of $4,000, and that the author would "await [the Ries'] prompt response." Nowhere did the FAC state that the Ries responded by unconditionally accepting that offer or that they performed according to its terms. In fact, a letter from Rie to the Tursugians attached to the TAC indicated that the Ries were attempting to negotiate different terms as late as September 1999.[FN11] Since the allegations were confused and contradictory, and no offer was made to clarify, the court was correct to sustain the demurrer to the breach of contract claim in the FAC.

> FN11. This included a deduction of $2,000 for roof repair or payment of the balance by December 1999. The Ries did not include a breach of contract claim in the TAC.

*D. Conspiracy*

**\*11** The conspiracy cause of action in the FAC was based on all defendants, including SBS, engaging in a conspiracy to "deprive [the Ries] of their property." "It is the long established rule that a conspiracy, in and of itself, however atrocious, does not give rise to a cause of action unless a civil wrong has been committed resulting in damage." ( *Wise v. Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 64, disapproved in part on another ground in *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503.) In the absence of any viable tort claim, the conspiracy claim could not stand, as the trial court ruled.

**DISPOSITION**

The judgment is affirmed.

We concur: EPSTEIN, P.J., and HASTINGS, J.
Cal.App. 2 Dist.,2005.
Rie v. Rosen
Not Reported in Cal.Rptr.3d, 2005 WL 39866 (Cal.App. 2 Dist.)

END OF DOCUMENT

**EXHIBIT P**

Westlaw.

Not Reported in F.Supp.2d, 2008 WL 4773976 (N.D.Cal.)
**(Cite as: 2008 WL 4773976 (N.D.Cal.))**

☞Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
Angelena R. CASSADY, Plaintiff,
v.
**UNIONADJUSTMENT** CO., INC., et al., Defendants.
**No. C 07-5405 SI.**

Oct. 27, 2008.

West KeySummary
**Federal Civil Procedure 170A ☜═2494.5**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2494.5 k. Debt Collection Practices, Cases Involving. Most Cited Cases
Genuine issues of material fact as to whether the collection agency provided the proper notice and resold the minivan for a reasonable price, precluded summary judgment in favor of the collection agency in an action for violations of federal Fair Debt Collection Practices Act (FDCPA) and California Rosenthal Act. The collection agency provided no evidence that the consumer was given proper notice of the intention to dispose of the minivan, or that the minivan was auctioned off at a commercially reasonable price. Consumer Credit Protection Act, § 802 et seq., as amended, 15 U.S.C.A. § 1692 et seq.; Cal. Civ.Code § 1788.17; Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

Mary Gloria Thompson, Eric F. Fagan, Law Offices of Eric F. Fagan, Chula Vista, CA, for Plaintiff.

David J. Kaminski, Michael Paul Lavigne, Carlson & Messer, LLP, Los Angeles, CA, Mark Ewell Ellis, Ellis, Coleman, Poirier, Lavoie & Steinheimer, LLP., Sacramento, CA, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

SUSAN ILLSTON, District Judge.

**\*1** Defendant **UnionAdjustment** Company, Inc. has filed a motion for summary judgment. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the October 31, 2008 hearing.

**BACKGROUND**

This lawsuit arises out of an underlying debt collection action brought in state court, *UnionAdjustment Company, Inc. v. Cassady,* (Santa Clara County Sup.Ct. Case No. 1-07-CV-079999). In the collection action, **UnionAdjustment** sued to collect the balance owed by Ms. **Cassady** after a minivan she purchased was repossessed for nonpayment and resold at an auction.

In January 2002, plaintiff purchased the 1993 Dodge Grand Caravan minivan from a dealership called Cash for Cars, Inc. Complaint ¶ 12; Def's Ex. 6 at Ex. D (sale contract). Pursuant to the terms of the Retail Installment Sale contract, the principal amount financed was $8,803.44, at an interest rate of 21.20%. Def's Ex. 6 ¶ 7, Ex. D. The purchase was financed through A-L Financial Corporation. In 2003, plaintiff stopped making payments on the minivan, and the vehicle was repossessed and resold at an auction on October 2, 2003, for $250.00. Def's Ex. 6 ¶ 13.[FN1] The parties agree that at the time of the sale, the Kelly Blue Book value of a 1993 Dodge Grand Caravan was $1,625.00. Def's Ex. 6, Ex. F. Plaintiff asserts that the $250 sale price was not reasonable in light of the Blue Book value. **Cassady** Decl. ¶ 12. Although defendant does not explicitly argue that the sale price was reasonable, defendant has submitted the declaration of Jeanette Concha of A-L Financial, which states:

> FN1. The record is somewhat disputed on the facts regarding the repossession and resale. Plaintiff states that the minivan stopped working, and she contacted A-L Financial and requested that the company waive one to two months payments due to her financial

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT Q**

Not Reported in F.Supp.2d, 2008 WL 4773976 (N.D.Cal.)
**(Cite as: 2008 WL 4773976 (N.D.Cal.))**

situation, but that A-L Financial refused to help her. **Cassady** Decl. ¶ 7. Plaintiff states that in late August 2003, she asked A-L Financial to pick up the van in a specified parking lot in Livermore, California, and that A-L Financial agreed and represented that "nothing would happen" to her. *Id.* ¶¶ 8-9. Plaintiff testified at her deposition that "Jose" from A-L Financial told her that "since I voluntarily had it repossessed, that he would fix it and he would send me a letter that I would have to sign saying that I voluntarily had them come and get it because it was no longer working, it was broken down. I never got that letter." Def's Ex. 8 at 37:15-21. Records submitted by defendant state that the vehicle was reported as abandoned by the Livermore Police Department. Def's Ex. 6 ¶ 9 & Ex. D.

A Vehicle Condition Report prepared by "Advanced Recovery," list[ed] the overall condition of the van as "POOR" and cit[ed] to numerous and extensive damage to the vehicle, including extensive paint damage and scratches, a cracked windshield, and a damaged fender.

Def's Ex. 6 & Ex. D (Vehicle Condition Report). The parties also dispute whether a notice of intent to sell the vehicle was sent to plaintiff prior to the auction, as required by California law.

Prior to the repossession, plaintiff had made payments totaling $3,919.54. *Id.* ¶ 8, Ex. C. After deductions for costs associated with the repossession, $73.50 was credited to plaintiff's account and paid to A-L Financial. Def's Ex. 6 at ¶ 13. During this time, plaintiff was living at 5157 Norma Way, # 236, in Livermore, California. Def's Ex. 8 ( **Cassady** Depo. at 16:18-23, 19:20-20:15).

On or about November 4, 2003, A-L Financial assigned to defendant **UnionAdjustment** the right to collect the deficiency owed by plaintiff, $4,966.00. Rubinfeld Decl. ¶¶ 2, 3, Def's Ex. 2.[FN2] Also on November 4, 2003, Union mailed a document titled "Collection Notice-Important" to plaintiff at the Norma Way address. Rubinfeld Decl. ¶ 5, Def's Ex. 3. The letter included a "Reference: A L FINANCIAL", stated the amount due plus interest was $5,053.08, and stated:

FN2. In the underlying collection action, Union attempted to use the declaration of Jeanette Concha of A-L Financial. Def's Ex. 6. As described *infra*, the state court did not permit Union to use that declaration after an objection by plaintiff. Plaintiff has not objected in this action to defendant's submission of the Concha declaration. Ms. Concha's declaration states that A-L Financial assigned the debt on December 6, 2006. Concha Decl. ¶ 6. Attached to the Concha declaration at Exhibit A is a document titled "Assignment of Account for Legal Action," and dated December 1, 2006. That document states that "[s]ince we have exhausted all efforts to get the above referenced account to pay amicably, we believe filing suit at this time could bring this matter to resolution." *Id.* Ex. A. Thus, although Ms. Concha states that A-L Financial assigned the debt to Union on December 6, 2006, it appears from all of the documents submitted that A-L Financial first assigned the debt to Union in 2003, and then in 2006 assigned the debt for purposes of legal action.

**\*2** THE ABOVE CLAIM HAS BEEN ASSIGNED TO THIS OFFICE FOR COLLECTION. IF YOU AGREE YOU OWE THE BALANCE SET FORTH ABOVE, PLEASE REMIT THE TOTAL IN THE ENVELOPE PROVIDED.

UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THAT THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM RECEIVING THIS NOTICE, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

**EXHIBIT Q**

Not Reported in F.Supp.2d, 2008 WL 4773976 (N.D.Cal.)
**(Cite as: 2008 WL 4773976 (N.D.Cal.))**

...

THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

The state Rosenthal Fair Debt Collection Practice Act and the federal Fair Debt Collection Practices Act require that except under unusual circumstances, collectors may not contact you before 8 a.m or after 9 p.m. They may not harass you by using threats of violence of arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov ....

*Id.* Defendant has submitted a declaration stating that the letter was not returned as undeliverable, and Union had no notice that it was not received by plaintiff. Rubinfeld Decl. ¶ 6.

According to plaintiff, on November 1, 2003, plaintiff left California and moved to Flagstaff, Arizona. Def's Ex. 8 ( **Cassady** Depo. at 16:24-17:5). Plaintiff does not recall whether she left a forwarding address with the Post Office, or whether she received any forwarded mail while in Arizona. *Id.* at 17:6-22, 22:11-17. Plaintiff states that she never received the November 4, 2003 notice. **Cassady** Decl. ¶ 15.

Union also sent plaintiff a letter dated November 27, 2006, titled "NOTIFICATION PER CCP SECTION 1033(2)." Rubinfeld Decl.¶ 7, Def's Ex. 4. That letter stated, *inter alia,* "**UNIONADJUSTMENT** CO., INC., A CALIFORNIA CORPORATION, INTENDS TO COMMENCE LEGAL ACTION AGAINST YOU." *Id.* Plaintiff states that she never received the November 27, 2006 letter. Def's Ex. 8 ( **Cassady** Depo. at 36:10-14, 37:24-38:11).

Plaintiff returned to California in February 2005. *Id.*

at 16:5-13. Plaintiff testified during her deposition that two or three times during the fall of 2006, a "Renee" from **UnionAdjustment** called her workplace asking for plaintiff. *Id.* at 34-36. Plaintiff testified that she never took or returned the calls because she believed that they were from a labor union. *Id.* at 36-37. The instant lawsuit is not based on any of these phone calls.

**\*3UnionAdjustment** retained defendant Zee Law Group to prosecute the collection action against plaintiff. On January 15, 2007, attorney Tappan Zee sent plaintiff a demand letter. That letter stated, *inter alia,*

As you are undoubtedly aware from prior correspondences, this office has been retained by **UnionAdjustment** Co. Inc. to collect the debt owed by you in the above referenced matter. **UnionAdjustment** Co. Inc. is the Assignee of Interest to the original account you previously held with Cash for Cars, Inc., account number ....

Def's Ex. 5. The letter also informed plaintiff that "this law firm has recommended to our client, **UnionAdjustment** Co. Inc., that suit shall be filed against you which could result in a judgment against you" and "Unless you make payment in-full within ten (10) days from the date of this letter, you will be served with legal process and litigation will commence against you without further notice." *Id.* The caption of the letter included a reference to "Court Case No.: <Pending>." *Id.* According to plaintiff, this was the first letter she received from either defendant regarding the collection of the debt. **Cassady** Decl.¶¶ 15, 18. Plaintiff testified at her deposition that based on the reference to "Court Case No.: <Pending>", she believed that she had already been sued. Def's Ex. 8 ( **Cassady** Depo. at 43-45).

On February 14, 2007, **UnionAdjustment** filed the collection action against plaintiff in state court, seeking the deficiency balance of $4,966.00, interest at 21.20%, and attorneys fees and costs. **Cassady** Decl. Ex. A. The collection action proceeded to trial on September 24, 2007. Def's Ex. 7 (trial transcript). At the beginning of the trial, Union's attorney offered a sworn declaration from Jeanette Concha of A-L Financial in lieu of Ms. Concha's live testimony. *Id.* After plaintiff's counsel objected on hearsay grounds, the judge did not admit the declaration. *Id.* The court

**EXHIBIT Q**

Not Reported in F.Supp.2d, 2008 WL 4773976 (N.D.Cal.)
**(Cite as: 2008 WL 4773976 (N.D.Cal.))**

found that "the plaintiff is unable to proceed in an appropriate manner by the presentation of competent evidence, and the Court therefore will find for the defendant in this manner." *Id.* at 8:23-27.

On October 23, 1997, plaintiff filed this lawsuit against defendants **UnionAdjustment** and the Zee Law Group alleging violations of the Federal Debt Collection Practices Act and the California Rosenthal Act. On October 3, 2008, plaintiff and defendant Zee Law Group filed a notice of settlement.

### LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric,* 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Ting v. United States,* 927 F.2d 1504, 1509 (9th Cir.1991). The evidence presented by the parties must be admissible. Fed.R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

### DISCUSSION

*\*4* In opposing defendant's motion for summary

judgment, plaintiff contends that **UnionAdjustment** violated the FDCPA and the Rosenthal Act <u>FN3</u> in the following ways: (1) **UnionAdjustment's** November 27, 2006 letter did not contain the proper notices for an "initial communication" with a debtor; (2) **UnionAdjustment** falsely claimed it had the right to collect the debt; (3) **UnionAdjustment** attempted to collect interest it was prohibited from collecting; and (4) the January 15, 2007 letter from the Zee Law Group did not contain the proper notices and made false and misleading statements. Defendant **Union-Adjustment** moves for summary judgment on plaintiff's claims, contending that **UnionAdjustment's** actions complied with federal and state law. Alternatively, **UnionAdjustment** contends that plaintiff's claims are barred by the California litigation privilege and the *Noerr-Pennington* doctrine. Finally, **Union-Adjustment** contends that plaintiff cannot establish the elements necessary to recover emotional distress damages.

> FN3. The Rosenthal Act incorporates the FDCPA. *See* Cal. Civ.Code § 1788.17. Plaintiff's opposition does not distinguish between her claims under the two statutes.

### I. November 27, 2006 letter; November 4, 2003 letter

Plaintiff argues that defendant's November 27, 2006 letter did not contain the notices required by the FDCPA and the Rosenthal Act for the "initial communication" to the debtor. 15 U.S.C. § 1692g(a). However, **UnionAdjustment** has submitted undisputed evidence that on November 4, 2003, it sent plaintiff a collection notice informing her of the assignment of the claim, as well as plaintiff's rights under California and federal law. Rubinfeld Decl. ¶ 3, Def's Ex. 3. That letter was mailed via first class mail to plaintiff's Norma Way address. The letter was not returned as undeliverable, and **UnionAdjustment** had no notice that it was not received by plaintiff. Rubinfeld Decl. ¶ 6.

Plaintiff's opposition does not address the November 4, 2003 letter in any way. Instead, plaintiff simply asserts that defendant's November 27, 2006 letter, which she characterizes as defendant's initial communication with her, did not comply with the law. However, under *Mahon v. Credit Bureau of Placer County, Inc.,* 171 F.3d 1197 (9th Cir.1999), "section

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT Q**

Not Reported in F.Supp.2d, 2008 WL 4773976 (N.D.Cal.)
**(Cite as: 2008 WL 4773976 (N.D.Cal.))**

1692g(a) requires only that a Notice be 'sent' by a debt collector. A debt collector need not establish actual receipt by the debtor." *Id.* at 1201. Thus, it is irrelevant whether plaintiff actually received the November 4, 2003 letter. Similarly, because defendant's November 27, 2006 letter was not the initial communication with plaintiff, that letter did not need to contain the notices specified by Section 1692(g). Accordingly, to the extent that plaintiff's claims are based on her allegation that defendant's "initial communication" violated federal and state law, the Court GRANTS defendant's motion for summary judgment.

## II. Defendant's right to collect the debt, including interest

Plaintiff contends that **UnionAdjustment** falsely claimed that it had the right to collect the debt from plaintiff. Plaintiff first argues that the state court determined that Union did not have the right to collect the debt from plaintiff when the court entered judgment in favor of plaintiff, and that Union is now barred from relitigating this issue under the doctrine of collateral estoppel. However, the state court did not find that Union did not have the right to collect the debt from plaintiff. Instead, the state court found that Union was not prepared to proceed to trial on the trial date, and entered judgment in favor of plaintiff on that ground. *Cf. Heintz v. Jenkins,* 514 U.S. 291, 296, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) (noting that fact that collection action is unsuccessful does not, by itself, establish violation of FDCPA).[FN4]

> FN4. To the extent plaintiff suggests that Union did not have an assignment from A-L Financial, plaintiff has not submitted any evidence disputing Union's proof of that assignment. *See* Rubinfeld Decl. ¶ 2, Def's Ex. 2 & 3. Plaintiff is also incorrect that Union did not have the right to seek interest, since the contract between A-L Financial and plaintiff provided for 21.2% interest, and "[a]n assignment carries with it all rights of the assignor." *Foreman Roofing, Inc. v. United Union of Roofers, Waterproofers & Allied Workers,* 144 Cal.App.3d 99, 107, 192 Cal.Rptr. 439 (1983).

**\*5** Plaintiff also contends that Union violated the law by falsely representing the character or legal status of a debt. Plaintiff argues that in order to collect the debt

from plaintiff, Union was required to show that the auction of the minivan was commercially reasonable, and that A-L Financial provided notice to plaintiff of its intention to dispose of the minivan. *See generally Atlas Thrift Co. v. Horan,* 27 Cal.App.3d 999, 1009, 104 Cal.Rptr. 315 (1972) ("[T]he right to a deficiency judgment depends on compliance with the statutory requirements concerning dispositions and notice."); *see also* Cal. Civ.Code § 2983.8(b) (no deficiency judgment unless court determines, based on affidavit or a hearing, that sale of vehicle complied with, *inter alia*, Cal. Com.Code § 9610); Cal. Com.Code § 9610 (sale must be commercially reasonable); Cal. Civ.Code § 2983.2(a) (notice).

Union does not address these issues in its papers. While the Vehicle Condition Report attached to the Concha declaration suggests that the condition of the minivan was poor, defendant has not submitted an affidavit or any other evidence establishing the reasonableness of the auction price. Since plaintiff has asserted that the sale was not commercially reasonable, and defendant has not submitted any evidence on this point, the Court cannot conclude on this record that the price was commercially reasonable.

With regard to notice, plaintiff argues that Union is required to establish proof of the mailing of a notice of intention to dispose of motor vehicle with a certified return receipt from the Post Office, citing California Civil Code Section 2983.2. That section provides that such notice "shall be personally served *or* shall be sent by certified mail, return receipt requested, *or* first-class mail, postage prepaid, directed to the last known address of the persons liable on the contract." Cal. Civ.Code § 2983.2 (emphasis added). Here, Ms. Concha states in her declaration that on September 4, 2003, a notice of intent to sell the motor vehicle at issue was sent to plaintiff. Def's Ex. 6 ¶ 10. The "Notice of Intention to Dispose of Motor Vehicle" is attached as Exhibit E to the Concha Declaration, as is a copy of the certified mail receipt. However, as plaintiff notes, the certified mail receipt does not have a postmark. Thus, on this record, the Court cannot conclude that defendant has met its burden of showing compliance with the notice requirement of Section 2983.2. Accordingly, the Court DENIES defendant's motion for summary judgment to the extent plaintiff's claims are based on the allegation that defendant falsely represented the character or legal status of the debt.

**EXHIBIT Q**

Not Reported in F.Supp.2d, 2008 WL 4773976 (N.D.Cal.)
**(Cite as: 2008 WL 4773976 (N.D.Cal.))**

### III. January 15, 2007 letter from Zee Law Group

Plaintiff contends that the January 15, 2007 letter from Zee Law Group did not contain the notices required by federal and state law for the initial communication. Plaintiff also argues that the letter contained false and misleading statements, such as including the statement "Court Case No.: < Pending>", which misleadingly implied that litigation had already been commenced, as well as misleadingly stating that "As you are undoubtedly aware from prior correspondences, this office has been retained by **UnionAdjustment** ...." since there was no prior correspondence informing plaintiff that Zee Law Group had been retained by **UnionAdjustment**.

**\*6** Defendant argues that the Zee Law Group's letter complied with the law, but also that there is no basis to hold **UnionAdjustment** vicariously liable for the January 15, 2007 letter. Although the Ninth Circuit has recognized vicarious liability under the FDCPA, *see Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994), "there is no legal authority for the proposition that an attorney is generally liable for the actions of his client." *Clark v. Capital Credit & Collection Servs.,* 460 F.3d 1162, 1173 (9th Cir.2006). "Under general principles of agency- which form the basis of vicarious liability under the FDCPA-to be liable for the actions of another, the 'principal' must exercise control over the conduct or activities of the 'agent.' " *Id.* (citations omitted).

Here, plaintiff has offered no evidence upon which a reasonable trier of fact could conclude that Union exercised control over the Zee Law Group. In contrast, defendant has submitted the declaration of Debbie Rubinfeld, Union's Vice President and Legal Manager. Ms. Rubinfeld states, "[o]nce a file is turned over by Union to its attorney, Union relies upon the attorney's judgment and discretion as to how to handle the legal collection, including how to proceed with pre-litigation demands and/or when and whether to proceed with litigation." Rubinfeld Decl. ¶ 7. Accordingly, the Court GRANTS defendant's motion for summary judgment to the extent plaintiff's claims against **UnionAdjustment** are based on the January 15, 2007 letter.

### IV. *Noerr-Pennington* doctrine and California litigation privilege

Defendant contends that plaintiff's claims are barred by the *Noerr-Pennington* doctrine and the California litigation privilege. The Court is unpersuaded that the *Noerr-Pennington* doctrine bars actions under the FDCPA. Defendant has not cited any authority within the Ninth Circuit applying this doctrine to FDCPA claims. Instead, the Court agrees with the reasoning of *Sial v. Unifund CCR Partners,* 2008 WL 4079281, \*3-5 (S.D.Cal. Aug.28, 2008), in which the court held that the doctrine did not bar an FDCPA claim. The *Sial* court relied on the Supreme Court's decision in *Heinz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995), which held that litigating attorneys were "debt collectors" under the FDCPA. Although *Heinz* did not directly address this question, the holding of *Heinz* strongly suggests that the *Noerr-Pennington* doctrine does not apply to FDCPA actions.

With regard to the California litigation privilege, the Court reaches a different conclusion based upon the facts of this case. The Court notes that the Rosenthal Act explicitly excludes attorneys from the definition of "debt collectors." *See* Cal. Civ.Code § 1788.2(c). The Court also notes that there is no California authority on the interplay between the Rosenthal Act and the California litigation privilege, and federal district courts are split on this issue. However, courts addressing the question have made findings based upon the specific alleged violations in each case, and have drawn distinctions between harassing conduct and communications occurring prior to the debt collection action, and those occurring within judicial proceedings. *See generally Lopez Reyes v. Kenosian & Miele, LLP,* 525 F.Supp.2d 1158, 1163-64 (N.D.Cal.2007) (discussing cases).

**\*7** Here, the only claim to survive summary judgment is plaintiff's claim under federal and state law that Union sought to collect a debt that plaintiff was not legally obligated to pay. As in *Lopez Reyes,* the "only allegedly wrongful debt collection practices in the present case occurred entirely in the context of the filing of a state court complaint to recover a debt." *Id.* at 1164. The Court finds that the application of the litigation privilege to the communication at issue would not render the Rosenthal Act meaningless, and holds that plaintiff's remaining claim, as brought under the Rosenthal Act, is barred.

**EXHIBIT Q**

Not Reported in F.Supp.2d, 2008 WL 4773976 (N.D.Cal.)
**(Cite as: 2008 WL 4773976 (N.D.Cal.))**

**VI. Emotional distress damages**

Defendant contends that plaintiff does not have any factual basis for claiming emotional distress damages as a result of Union's actions. The parties also disagree on whether a plaintiff must meet the standard for intentional infliction of emotional distress in order to recover emotional distress damages under the FDCPA.

The Court finds that whether plaintiff has suffered emotional distress as a result of Union's actions is a factual question that is inappropriate for summary judgment. In the event this case proceeds to trial, the Court will resolve the question of the appropriate legal standard governing plaintiff's claim for emotional distress damages.

**CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part defendants' motion for summary judgment. (Docket No. 31).

**IT IS SO ORDERED.**

N.D.Cal.,2008.
Cassady v. Union Adjustment Co., Inc.
Not Reported in F.Supp.2d, 2008 WL 4773976 (N.D.Cal.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT Q**

Westlaw.

Not Reported in F.Supp.2d, 2007 WL 1840057 (E.D.Mich.)
**(Cite as: 2007 WL 1840057 (E.D.Mich.))**

▶ Only the Westlaw citation is currently available.

United States District Court,
E.D. Michigan,
Southern Division.
Leslie PURNELL, Plaintiff,
v.
ARROW FINANCIAL SERVICES, LLC, Defendant.
**No. 05-CV-73384-DT.**

June 26, 2007.

Ian B. Lyngklip, Lyngklip & Taub, Southfield, MI, for Plaintiff.

Steven A. Siman, Troy, MI, for Defendant.

**OPINION AND ORDER DENYING PLAIN-
TIFF'S "MOTION FOR JUDGMENT AS A
MATTER OF LAW OR FOR NEW TRIAL"
AND "AMENDED MOTION FOR NEW TRIAL
OR TO ALTER OR AMEND JUDGMENT"**

ROBERT H. CLELAND, United States District
Judge.

*1 Pending before the court are Plaintiff Leslie
Purnell's Motion for Judgment as a Matter of Law or
for New Trial," filed on February 19, 2007 pursuant
to Federal Rule of Civil Procedure 50(b) and Plain-
tiff's "Amended Motion for New Trial or to Alter or
Amend Judgment," filed on February 20, 2007 pur-
suant to Federal Rule of Civil Procedure 59(a) and
59(e). Defendant Arrow Financial Services, LLC
filed a combined response addressing both motions.
After reviewing the motions, the court concludes that
a hearing is unnecessary. E.D Mich. LR. 7.1(e)(2).
Plaintiff's motions will be denied for the reasons set
forth below.

**I. BACKGROUND**

Plaintiff's original claims against Defendant included
both federal and state violations under the Fair Debt
Collection Practices Act ("FDCPA"), 15 U.S.C. §
1692 et seq and the Michigan Occupational Code,

Mich. Comp. Laws § 339. On February 6, 2007, the
court began the first part of a bifurcated jury trial to
decide the threshold factual question of the case: De-
fendant's *bona fide* error defense. Defendant admitted
that it erroneously reported Plaintiff's account with-
out a dispute marker to Equifax, a credit bureau re-
porting agency, on eleven occasions within the one-
year statutory period, in violation of 15 U.S.C. §
1692e(8). Following this admission, Defendant set
forth an affirmative defense of *bona fide* error, gov-
erned by 15 U.S.C. § 1692k(c). The jury accepted
this defense, returning a verdict in favor of Defen-
dant. The court then dismissed Plaintiff's state law
claims and closed the case, as no viable federal action
remained. (2/9/07 Order.)

The state law claims were dismissed pursuant to 28
U.S.C. § 1367(c), which allows this court to dismiss
all state claims if "the district court has dismissed all
claims over which it has original jurisdiction." In this
case, the federal claims afforded the court jurisdic-
tion. When those claims ran their course, the court
then had the discretion to dismiss the state law
claims, which did not independently afford this court
jurisdiction. Further, the court noted that since only a
limited trial for narrow and discrete factual issues
was conducted, "considerations of judicial economy
do not weigh in favor of further proceedings resolv-
ing the state claims." (2/9/07 Order at 2.)

Plaintiff now moves for a judgment notwithstanding
the verdict pursuant to Federal Rule of Civil Proce-
dure 50(b) and pertaining to the validity of Defen-
dant's *bona fide* error defense. Regarding the court's
dismissal of all remaining claims, Plaintiff moves for
a new trial or to alter or amend judgment pursuant to
Federal Rule of Civil Procedure 59(a) and (e).

**II. STANDARD**

**A. Federal Rule of Civil Procedure 50(b)**

If a party moved for judgment as a matter of law pur-
suant to Rule 50(a) before submission of the case to
the jury if the decision of the jury is adverse to that
party, it may subsequently move to renew that motion
or alternatively seek new trial under Rule 50(b). The

**EXHIBIT R**

Not Reported in F.Supp.2d, 2007 WL 1840057 (E.D.Mich.)
**(Cite as: 2007 WL 1840057 (E.D.Mich.))**

court may grant the renewed motion if "there is no legally sufficient evidentiary basis for a reasonable jury to find" the way it did. Fed.R.Civ.P. 50(a)(1) & (b). The standard is essentially the same as that for summary judgment under Federal Rule of Civil Procedure 56. In deciding this motion, the court must view the evidence "in the light most favorable to the party against whom the motion is made, and that party [must be] given the benefit of all reasonable inferences. *Williams v. Nashville Network,* 132 F.3d 1123, 1131 (6th Cir.1997).

**B. Federal Rule of Civil Procedure 59(a)**

**\*2** Federal Rule of Civil Procedure 59(a) provides, in pertinent part, that:

A new trial may be granted to all or any of the parties on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the Courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the Courts of the United States ...

Fed.R.Civ.P. 59(a). The Supreme Court has noted that "the authority of trial judges to grant new trials" pursuant to Rule 59(a) "is large". *Gasperini v. Ctr. for the Humanities Inc.,* 518 U.S. 415, 433, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) ("The trial judge in the federal system, we have reaffirmed, has ... discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence.") Under this standard, courts have reversed decisions granting new trials upon having "definite and firm convictions ... that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of relevant factors." *Homes v. City of Massilon,* 78 F.3d 1041, 1045 (6th Cir.1996), *cert. denied,* 519 U.S. 935, 117 S.Ct. 12, 136 L.Ed.2d 228 (1996).

**C. Federal Rule of Civil Procedure 59(e)**

A motion to alter or amend judgment should be granted only "if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d

804, 834 (6th Cir.1999). "Rule 59(e) motions are not to be used to relitigate matters already argued and disposed of; they are intended to permit the Court to correct errors of fact appearing on the face of the record, or errors of law." *Indep. Petroleum Ass'n of Am. v. Babbit,* 178 F.R.D. 323, 324 (D.D.C.1998). Additionally, a party wishing to alter or amend a judgment may not "raise arguments which could and should have been made before judgment issued." *Sault St. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367, 374 (6th Cir.1998). "Rather than filing a Rule 59(e) motion, the proper action for a party seeking redress on issues previously litigated is to appeal." *Keenan v. Bagley,* 262 F Supp.2d 826, 830 (N.D.Ohio 2003).

**III. DISCUSSION**

**A. Plaintiff's Rule 50(b) Motion**

Plaintiff's motion must be denied because reasonable minds could come to a conclusion other than one favoring the movant. *Williams,* 132 F.3d at1 131. Defendant has admitted it violated 15 U.S.C. § 1692e(8), which states:

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

Following this admission, however, Defendant set forth a *bona fide* error defense, governed by 15 U.S.C. § 1692k(c), which states:
**\*3** (c) Intent: A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from an error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

The jury found that Defendant proved the following three elements required for the defense:
1. it made an unintentional error

2. the error was made in good faith

3. the error was made notwithstanding procedures

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT R**

Not Reported in F.Supp.2d, 2007 WL 1840057 (E.D.Mich.)
**(Cite as: 2007 WL 1840057 (E.D.Mich.))**

which were reasonably adapted to prevent the error
FN1

> FN1. Jury instructions [Dkt. # 63 at 9]; *see also Edwards v. McCormick,* 136 F.Supp.2d 795, 800 (S.D.Ohio 2001).

#### 1. Defendant has satisfied the unintentional element of the defense

Defendant was only required to show that the "violation" was unintentional, not that the "communication" itself was unintentional. *Lewis v. ACB Bus. Servs.,* 135 F.3d 389, 401-02 (6th Cir.1998). The Sixth Circuit has held that "the *bona fide* error defense applies only to clerical errors." *Smith v. Transworld Sys., Inc.,* 953 F.2d 1025, 1034 (6th Cir.1992). The 15 U.S.C. § 1692e(8) violation occurred due to Defendant's failure to place a dispute marker on Plaintiff's account for credit reporting purposes. Defendant, however, did provide undisputed evidence that it did, at least initially, place a marker on Plaintiff's account following a call from Plaintiff on August 23, 2002. The jury found that Plaintiff's markers were lost in June 2004 when Defendant converted all accounts to a new system, "Metro 2". This new format, introduced by the credit reporting industry, replaced the "Metro 1" format.

Defendant has presented sufficient evidence to demonstrate that the conversion process from Metro 1 to Metro 2 was the unintentional cause of the reporting error. Brian Cutler, Defendant's executive vice-president and chief technology officer, testified that in September 2003 over twenty-two million accounts had to be reformatted and converted. Defendant argues that this would amount to a "vast undertaking that required months of advance planning and testing." (Def.'s Resp. at 6.) Cutler further testified that Defendant worked with Ontario Systems, the software vendor, and the major credit bureaus (Equifax, TransUnion and Experian) to make sure that the conversion would occur without problems. *Id.* Cutler testified that after several "dry runs" to check for problems, no issues regarding the dispute markers arose. *Id.* This was, according to the jury, a reasonable effort on Defendant's part.

Further, Cutler testified that, according to his knowledge, this case represents the only instance, out of 22 million accounts, of a marker being deleted. *Id.* Plain-

tiff offered no evidence to rebut Cutler's testimony that this error was an unintentional result of the conversion process and that it apparently had only affected one in 22 million accounts. Viewed in the light most favorable to defendant, the court finds that there was a sufficient evidentiary basis to satisfy the first element of the *bona fide* error defense.

#### 2. Defendant has satisfied the good faith element

**\*4** The jury found that Defendant has shown that it has acted in good faith, satisfying the second element of the defense. Plaintiff's allegations that Defendant has attempted to "raise a violation of the FDCPA as a defense to a different violation," (Pl.'s Br. at 11), is unwarranted. Defendant's *bona fide* error defense is applied to the failure of marking an account as disputed. The *bona fide* error itself is not a violation of the FDCPA, therefore Plaintiff's reliance on *Seabrook v. Onondaga Bureau of Medical Economics, Inc.,* 705 F.Supp. 81 (N.D.N.Y., 1989), is misplaced.

Courts have defined "good faith" in several ways: (1) genuine mistakes, as opposed to contrived mistakes, (2) errors without fraud, (3) sincere errors and (4) an error resulting despite efforts taken with due care. *See* Black's Law Dictionary 168 (7th ed.1999); *see also Kort v. Diversified Collection Services,* 394 F.3d 530, 538 (7th Cir.2005); *Edwards, v. McCormick,* 136 F.Supp.2d 795, 801 n. 8 (S.D.Ohio 2001). Further, an error that results despite an active effort to exercise due care to avoid making the mistake has been considered an error in "good faith." *Randolph v. IMBS, Inc.,* 368 F.3d 726, 729 (7th Cir.2004). As described below, it was reasonable for the jury to conclude that Defendant has exercised such due care, albeit not perfectly, in an attempt to avoid such errors.

The jury had a reasonable basis to find that Defendant's error was made in good faith. Undisputed evidence has shown that Defendant initially placed a dispute marker on Plaintiff's account after plaintiff's phone call on August 23, 2002. Defendant reported the account as undisputed only when the conversion from Metro 1 to Metro 2 erased the marker. Plaintiff has offered no evidence to show that Defendant acted fraudulently, in bad faith, or in any other way that would prevent the "good faith" requirement from being met.

#### 3. Defendant has satisfied the third element of the

**EXHIBIT R**

Not Reported in F.Supp.2d, 2007 WL 1840057 (E.D.Mich.)
**(Cite as: 2007 WL 1840057 (E.D.Mich.))**

### defense

A reasonable jury could find that Defendant established by a preponderance of the evidence that it maintained procedures reasonably adapted to avoid errors. In this regard, the law does not require a debt collector to take every conceivable precaution to avoid errors; rather it only requires reasonable precaution. *Kort,* 394 F.3d at 539. Defendant presented evidence demonstrating that it took several reasonable measures to prevent such errors. Although the measures failed in regards to Plaintiff's account, such a massive and complex conversion is susceptible to at least a small number of errors. It would be unreasonable to expect Defendant to conduct a perfect conversion. Viewed in context, the mere existence of errors in Plaintiff's account does not of its own accord compel the conclusion that Defendant failed to implement procedures reasonably adapted to prevent such errors.

Cutler's testimony provides further information that illustrates additional precautions Defendant took. Following the nine-month preparation period and subsequent conversion process, it would have been unreasonable, and in fact impossible, for Defendant to undertake the duty of double-checking all twenty-two million accounts without any notice of dispute by a debtor. As noted in *Kort,* a debt collector need only act reasonably to avoid errors, rather than take every conceivable precaution. *Id.* at 539. The jury properly found that Defendant's precautions prior to and during the conversion were reasonable. There was no additional duty to double-check all accounts without notice by a putative debtor. Plaintiff at first did not give Defendant notice of his marker dispute. Plaintiff argues that his phone call to Defendant on August 17, 2004 should have put Defendant on notice of the missing dispute marker. (Pl.'s Br. at 5-6.) Defendant, however, has provided evidence, including notes from the telephone conversation on Aug. 17, 2004, which include no mention of the marker. The notes only refer to the account in general. Plaintiff did not dispute this version of the telephone conversation at trial. The jury, in any event, was free to weigh the above evidence. Having no notice from Plaintiff, Defendant had no reason to double-check the dispute markers.

**\*5** Because there was a legally sufficient evidentiary basis for a reasonable jury to find for the Defendant on the *bona fide* error defense, Plaintiff's motion, to

the extent that it raises arguments under Rule 50, will be denied.

### B. Plaintiff's Rule 59 Motion

The court is doubtful that Plaintiff's Rule 59 motion is in fact properly so labeled. Rather than seek a new trial, Plaintiff instead appears to challenge the court's decision to (1) bifurcate the trial and (2) dismiss the remaining state claims. The motion is thus more akin to a motion for reconsideration. E.D Mich. LR 7.1(g). The motion therefore may be untimely under the local rules. Further, the court is not persuaded that the motion raises a palpable defect the correction of which would lead to a different outcome. *Id.* Applying Rule 59, the court will reach the same result.

On the merits, Plaintiff must meet a high standard under Rule 59. Because Plaintiff does not suggest that there is any newly discovered evidence or a change in controlling law, this section addresses his claims that this court has made a clear error of law causing manifest injustice by bifurcating the trial and determining Defendant's *bona fide* error defense first.

Plaintiff's argument is not persuasive. Federal Rule of Civil Procedure 42(b) explicitly states that "the Court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or of any separate issue ... or issues ...." Here, the court advanced those interests by bifurcating the trial. The three relevant factors that have supported separation of issues are the following:

(1) whether the issue was indeed a separate issue, (2) whether it could be tried separately without injustice or prejudice, and (3) whether the separate trial would be conducive to judicial economy, especially if a decision regarding that question would be dispositive of the case and would obviate the necessity of trying any other issues.

*In re Benecting Litig.,* 857 F.2d 290, 320 (6th Cir.1988).

Due to the FDCPA's one-year statute of limitations, the only "collection activity" at issue in this case was Defendant's monthly automated credit reporting to Equifax, which lacked a dispute marker in violation

**EXHIBIT R**

Not Reported in F.Supp.2d, 2007 WL 1840057 (E.D.Mich.)
**(Cite as: 2007 WL 1840057 (E.D.Mich.))**

of Section 1692e(8). Defendant's *bona fide* error defense, pertaining to the activities at issue, was accepted by the jury. Subsequently, the federal claims were dismissed. The bifurcation proved efficient and economically sound when the state law claims were also properly dismissed pursuant to 28 U.S.C. § 1367(c). This court appropriately declined jurisdiction over the remaining state law claims because all claims over which it had original jurisdiction were dismissed. The court also acted in accordance with Rule 42(b) when it bifurcated the trial. Further, judicial economy did not favor further proceedings for the state claims because only a limited trial was conducted for a narrow factual issue. For these reasons, the court did not abuse its discretion is dismissing all state claims when the claims for which it had original jurisdiction were dismissed.

*6 Plaintiff claims that the court did not provide an opportunity for briefing or trial before dismissing the other FDCPA claims "sua sponte." (Pl.'s Br. at 1). The court disagrees. As noted in Defendant's response, during the month leading up to the trial, the court and the parties focused heavily on the statute of limitations issue and how it affected Plaintiff's various claims under the FDCPA. (Def.'s Resp. at 12). Further, the statute of limitations issue was also raised in Defendant's motion to dismiss for lack of subject matter jurisdiction, Defendant's motions in limine, the parties' trial briefs, the contested jury instruction submissions and the joint statement submitted February 1, 2007. The statute of limitations issue was also addressed at length in a pretrial conference of January 29, 2007, a telephone status conference on February 2, 2007 and another conference on the morning of trial. (Def.'s Resp. at 12). Plaintiff has had ample opportunity to be heard and the court is simply not persuaded by Plaintiff's theories. The FDCPA is not a strict liability statute in the broad sense that Plaintiff argues because it is subject to a *bona fide* error defense. At trial, the jury found for Defendant on the *bona fide* error defense. Plaintiff shall not be afforded the opportunity to relitigate such issues. The motion will be denied.

## IV. CONCLUSION

IT IS ORDERED that Plaintiff's "Motion for Judgment as a Matter of Law or for New Trial" [Dkt. # 71] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's "Motion for New Trial or to Alter or Amend Judgment" [Dkt. # 72] is DENIED.

E.D.Mich.,2007.
Purnell v. Arrow Financial Services, LLC
Not Reported in F.Supp.2d, 2007 WL 1840057 (E.D.Mich.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT R**

Westlaw.

Not Reported in F.Supp.2d, 2006 WL 83474 (E.D.N.Y.)
**(Cite as: 2006 WL 83474 (E.D.N.Y.))**

Only the Westlaw citation is currently available.FOR ONLINE PUBLICATION ONLY

United States District Court,
E.D. New York.
Alqueio HERNANDEZ, on his own behalf and on
behalf of all others similarly situated, Plaintiff,
v.
THE AFFILIATED GROUP, INC. d/b/a Affiliated
Credit Services, Defendant.
**No. 04CV4467 (JG).**

Jan. 12, 2006.

Katz & Kleinman, PLLC, Uniondale, New York, By:
Lawrence Katz, for Plaintiff.

Arthur Sanders, Spring Valley, New York, for Defendant.

*MEMORANDUM AND ORDER*

GLEESON, J.

*1 Alqueio Hernandez brought this action for damages under the Fair Debt Collection Practices Act ("FDCPA"). Hernandez alleges that a letter sent to him by Affiliated Credit Services ("Affiliated") seeking to collect a debt of $25.85 on behalf of Genesis Financial Solutions, Inc. ("Genesis") did not contain "the name of the creditor to whom the debt is owed" as required by 15 U.S.C. § 1692g(a)(2). The plaintiff moves for judgment on the pleadings and for class certification, and the defendant cross-moves for summary judgment. Oral argument was held on the motions on Friday, January 6, 2006. Because the name of the creditor was plainly stated on the reverse side of the letter Hernandez received, and because no information on the front side of the letter contradicted or confused that disclosure, the defendant's motion for summary judgment is granted. Hernandez's motion for judgment on the pleadings is accordingly denied, and the motion for class certification is denied as moot.

BACKGROUND

Hernandez held an account for electrical service with Smart Energy, Inc., a re-seller of power for Con Edison. When Hernandez's account became overdue, Smart Energy referred the debt to Affiliated for collection. Smart Energy then sold the debt, along with many other accounts, to Peak Financial Performers, which again referred the same debts to Affiliated for collection. Peak Financial Performers in turn sold the debt to Genesis Financial Solutions, and Genesis, for a third time, referred the debts to Affiliated. Affiliated then sent Hernandez the letter that is the subject of this action.

The body of the letter Affiliated sent Hernandez stated that "Your account has been placed for collection and payment in full is due. The above listed account has been turned over to us by our client...." At the top right of the front side of the letter, under the heading "Account Identification," is the following: "Client: 153910." The parties agree that in place of "153910" should have been "Genesis Financial Solutions, Inc.," but through a software glitch at Affiliated, a number meaningless to the reader appeared instead. Nowhere on the front side of the letter is any other party identified as the client or creditor. The letter did, however, notify Hernandez that upon written request "within 30 days after receiving this notice," Affiliated would "provide [him] with the name and address of the original creditor, if different from the current creditor." Further, the letter states, in a stand-alone sentence: "Please see reverse side for important privacy information."

The first sentence on the back of the letter, under the heading "GENESIS FINANCIAL SOLUTIONS, INC. PRIVACY NOTICE," reads as follows: "You are receiving this notice because Genesis Financial Solutions, Inc .... is the owner of one or more of your accounts, which we have acquired from the lender or other person that previously help [sic] your account." The parties agree "help" should have been "held." Affiliated sent out approximately 45,000 letters in the same batch as Hernandez's, all of which apparently contained the same errors.

ANALYSIS

*2 The FDCPA requires a debt collector to inform a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT S**

Not Reported in F.Supp.2d, 2006 WL 83474 (E.D.N.Y.)
**(Cite as: 2006 WL 83474 (E.D.N.Y.))**

consumer in writing, "within five days after the initial communication ... in connection with the collection of any debt," among other things, of "the name of the creditor to whom the debt is owed" and "that, upon the consumer's written request within [thirty days of receiving the notice], the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." 15 U.S.C. § 1692g(a)(2), (5). Affiliated was therefore not required to provide Hernandez with the name of the original creditor, Smart Energy, even though that was likely the only entity that would have identified to him the origin of his obligation. Affiliated was required to provide Hernandez with the name of the creditor to whom the debt was owed, Genesis.

In determining whether a dunning letter violations the FDCPA, the "least sophisticated consumer" standard applies, the "basic purpose" of which "is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993). As the Second Circuit has emphasized, however, "in crafting a norm that protects the naive and the credulous[,] the courts have carefully preserved the concept of reasonableness." Id. at 1319. "[E]ven the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.*

Indeed, in *McStay v. I.C. System, Inc.,* the Second Circuit held that "when a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back. So long as nothing on the front of the letter overshadows or contradicts the validation notice, the FDCPA does not require the notice to be printed on the front." 308 F.3d 188, 191 (2d Cir.2002); *see also Russell v. Equifax ARS,* 74 F.3d 30, 34 (presuming debt collection letter should be read in its entirety); *Clomon,* 988 F.2d at 1319, citing with approval *Gaetano v. Payco of Wisconsin, Inc.,* 774 F.Supp. 1404, 1411 (D.Conn.1990) (in the *Clomon* Court's characterization: "approving collection notice even though required disclosures were printed only on the back of the notice, since language on the front directed consumers to read the reverse").

As noted above, the front of the letter in this case contained nothing to contradict the plain notice on

the reverse that Genesis Financial Solutions "is the owner of one or more of your accounts." Despite the plaintiff's suggestion to the contrary, I conclude that even the least sophisticated consumer would well understand from this statement that Genesis owned the account referenced on the front of the letter and not some other, unrelated account. The FDCPA "protects debt collectors against liability for [such] bizarre or idiosyncratic interpretations of collection notices." *Clomon,* 988 F.3d at 1320.

**\*3** The plaintiff's only remaining argument is that the notice on the front of the letter ("Please see the reverse side for important privacy information") was sufficiently different from McStay's analogous referral ("Notice: See reverse side for important information"), 308 F.3d at 189, to warrant an opposite result. However, there is little difference between the two notices except the one in this case includes the word "privacy." The plaintiff argues that a consumer left curious from the front of the letter as to the identity of the creditor but having no particular interest in "privacy" would not bother even to glance at the reverse side of the letter. I disagree.

The reader is referred to the back page for important information, and whether about privacy or any other important topic, in my view even the least sophisticated consumer would turn the page. Indeed, when a collection letter is no more than two pages in length, the presumption of "a willingness to read a collection notice with some care," *Clomon,* 988 F.3d at 1319, can hardly mean anything if it does not include an expectation that the debtor will persevere to the second page for at least a quick skim. As noted, "GENESIS FINANCIAL SOLUTIONS, INC." appears in all capitals on the top line of the reverse side, and the first sentence identifies Genesis as the creditor. As the plaintiff concedes, there was nothing on the front of the letter to overshadow that notice: "the issue is not whether the least sophisticated consumer was misled into believing the creditor was 153910, but whether the letter conveyed to the consumer the name of the creditor ." Plaintiff's Mem. at 5. I conclude it did, and therefore the letter did not violate the FDCPA.

I note that even if the letter did violate § 1692g, Affiliated has satisfied the requirements of the "bona fide error" defense. Section 1692k(c) provides:

Not Reported in F.Supp.2d, 2006 WL 83474 (E.D.N.Y.)
**(Cite as: 2006 WL 83474 (E.D.N.Y.))**

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

There is no dispute that the substitution of "153910" in place of Genesis on the front of the letter was unintentional. Paul Skovbroten, Affiliated's Secretary, submitted an affidavit stating:
The error resulted from a unique set of circumstances that had never previously occurred in our company.... We were unaware of the glitch in our software as it had never manifested itself on previous placements received from other creditor clients. It is rare for debt that is repeatedly resold to be continually placed with the same collection agency.

Affidavit at ¶ 5, 11. The plaintiffs do not dispute these assertions, but instead contend that because of the massive number of letters Affiliated was sending out, any reasonable system for detecting mistakes would have caught the error here, and that "[t]his error could have easily been detected had the defendant read the letter in its final form." Plaintiff's Reply Mem. at 3.

**\*4** Any typographical or clerical error, however, could be detected by close reading, yet the Congress chose to provide debt collectors with a defense against liability for such errors so long as reasonable procedures are adapted to prevent them. When, as in this case, individual letters are generated from a template by an automated process of inserting particular information for each letter from fields in a electronic database-commonly called, in its simplest form, a "mail merge"-an error need only occur once, namely, in the software directing the mail merge, to be repeated an inordinate number of times. The letter at issue here obviously contained a field designed to disclose "the name of the creditor to whom the debt is owed" in compliance with § 1692g(a)(2). The mail merge software merely assigned the wrong field in the database to fill that slot in the letter. Coding glitches such as this, due to unpredicted and unprecedented business circumstances, are inevitable in the modern world, and the Congress has deemed them, when genuinely unintentional, to be an insufficient basis for liability under the Act. Particularly where, as here, the glitch resulted not in the elimination of a

required piece of information, but rather its location elsewhere in the letter, the bona fide error defense is appropriately invoked.[FN1]

> FN1. I am aware the Second Circuit has previously acknowledged the "economic necessity of mass mailing in the debt collection industry," yet held that "[n]o mass mailing technique is permissible-regardless of how effective it might be-if that technique constitutes a false, deceptive, or misleading communication." *Clomon,* 988 F.3d at 1321. I do not depart from that holding here. In *Clomon,* the court addressed a practice it found to be intentionally misleading: "the use of an attorney's signature on a collection letter implies that the letter is 'from' the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent," and "in a mass mailing, these implications are frequently false." *Id.* No such intentional deception is even remotely detectable in this case.

### CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is granted. The plaintiff's motion for judgment on the pleadings is denied, and the motion for class certification is denied as moot.

So ordered.

E.D.N.Y.,2006.
Hernandez v. Affiliated Group, Inc.
Not Reported in F.Supp.2d, 2006 WL 83474 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.    **EXHIBIT S**