# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA WELKER,<br><br>                                Plaintiff,<br>   vs.<br><br>LAW OFFICE OF DANIEL J. HORWITZ,<br><br>                                Defendant. | CASE NO. 08-CV-2259 - IEG (WMc)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>[Doc. No. 36] |

Currently before the Court is Plaintiff Erica Welker's Motion for Summary Judgement. Having considered the parties' arguments, and for the reasons set forth below, the Court **GRANTS** the motion in its entirety.

## BACKGROUND

Defendant Daniel J. Horwitz is an attorney engaged in collecting unpaid debts for creditors, including the Ambulatory Care Surgery Center. On October 2, 2008, Defendant sent Welker a dunning letter,[1] indicating that the Ambulatory Care Surgery Center retained his office to collect Welker's outstanding balance related to her past-due account for medical services rendered. The letter listed $23,508.61 as the principal amount of the claim, and also asked for interest at the legal rate and reimbursement of related court costs. The dunning letter was delivered along with the state court Summons and Complaint, and was the only communication sent to Welker by Defendant.

---

[1] A "dunning letter" is an alternative term for a collection notice.

On December 5, 2008, Welker brought a lawsuit against Defendant, alleging that the dunning letter she received violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"), and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.32 ("Rosenthal Act"). Defendant subsequently filed a Motion to Dismiss, which the Court denied.

On February 19, 2010, Plaintiff moved for summary judgment on several issues, without requesting any specific award of damages, restitution, or interest. Defendant filed an opposition, which does not address the substance of any of Plaintiff's claims but rather raises several defenses to liability. Plaintiff filed a reply. The Court heard oral argument on the motion on March 22, 2010.

## LEGAL STANDARD

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." Celotex, 477 U.S. at 323. To satisfy this burden, the movant must demonstrate that no genuine issue of material fact exists for trial. Id. at 322. Where the moving party does not have the ultimate burden of persuasion at trial, it may carry its initial burden of production in one of two ways: "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., v. Fritz Cos., 210 F.3d 1099, 1106 (9th Cir. 2000). To withstand a motion for summary judgment, the non-movant must then show that there are genuine factual issues which can only be resolved by the trier of fact. Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000). The non-moving party may not rely on the pleadings alone, but must present specific facts creating a genuine issue of material fact through affidavits, depositions, or answers to interrogatories. FED. R. CIV. P. 56(e); Celotex, 477 U.S. at 324.

The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. Id.; Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008). Moreover, the court is not required "'to scour the record in search of a genuine issue of triable fact,'" Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir.1996) (citations omitted), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001).

## DISCUSSION

In light of the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(a), (e).

Section 1692g(a) of the FDCPA sets forth specific guidelines that debt collectors must follow in sending out a collection letter. Section 1692g(a) provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's *written* request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a) (emphases added). In her motion for summary judgment, Welker alleges that

1  Defendant's dunning letter, which was the only communication received by her, failed to comply with
2  sub-sections (a)(4) and (a)(5) above because it did not state that those requests have to be made in
3  writing. Welker also alleges that by requesting the outstanding balance together with interest and court
4  costs, the dunning letter failed to state the "amount of the debt" as required by sub-section (a)(1)
5  above. Finally, Welker alleges Defendant's letter failed to include the notice required by Section
6  1812.700 of the California Civil Code.[2] Defendant does not challenge the substance of any of
7  Plaintiff's claims, but rather asserts a number of defenses to liability. The Court will address each
8  defense raised individually in conjunction with the claim(s) to which it relates.

**I.     The FDCPA**

    A.     Summary judgment on the FDCPA claims

        *i.     Alleged violation of Section 1692g(a)(1).*

Welker first asserts Defendant violated the FDCPA by failing to state the full "amount of the debt" owed as required by Section 1692g(a)(1). In the Ninth Circuit, the impact of the language alleged to violate Section 1692g is judged under the "least sophisticated debtor" standard. Swanson v. Southern Or. Credit Serv., Inc., 869 F.2d 1222, 1225 (9th Cir. 1988) (citing Baker v. G.C. Serv. Corp., 677 F.2d 775, 778 (9th Cir. 1982)). That is, if the Court finds the least sophisticated debtor would likely be misled by the notice which Welker received from Defendant, the Court must hold that Defendant has violated the FDCPA. See id.

In the present case, Welker alleges the notice was misleading because it demanded payment

---

[2] Section 1812.700 provides that in addition to the requirements imposed by the Rosenthal Act, "third party debt-collectors subject to the federal Fair Debt Collection Practices Act" must provide the following notice to the debtors:

> "The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov."

CAL. CIV. CODE § 1812.700(a).

for "[Welker's] outstanding balance, interest at the legal rate, and reimbursement of court costs related to [Welker's] past-due account." However, a specific amount was given only for the "principal amount of the claim," which Defendant claimed was $23,508.61. Nowhere in the dunning letter did Defendant indicate how much was being asked for the "interest at the legal rate" or for the "reimbursement of court costs." As the Seventh Circuit said in a similar case, a statement such as this does not comply with the FDCPA's requirement that Defendant list the "amount of the debt" because "[t]he unpaid principal balance is not the debt; it is only a part of the debt." See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C., 214 F.3d 872, 875 (7th Cir. 2000) (finding a violation of Section 1692g(a)(1) where the dunning letter specified a firm amount only for the "unpaid *principal* balance" of the loan, but then also sought to recover "accrued but unpaid interest, unpaid late charges, escrow advances or other charges for preservation and protection of the lender's interest in the property, as authorized by [the] loan agreement" (emphasis in original)).

Accordingly, because the least sophisticated debtor would likely have interpreted Defendant's letter as stating only a part of the debt owed, Defendant has violated the requirement in Section 1692g(a)(1) to provide the total "amount of the debt." See id. at 875-76 ("What [the defendants] certainly could do was to state the total amount due–interest and other charges as well as principal–on the date the dunning letter was sent. We think the statute required this."); Dupuy v. Weltman, 442 F. Supp. 2d 822, 827-28 (N.D. Cal. 2006) (quoting Miller, 214 F.3d 872, with approval).[3]

   ii.   *Alleged violations of Section 1692g(a)(4) & (a)(5).*

Welker next asserts Defendant violated the FDCPA by failing to advise her that to be entitled to a verification of the debt under Section 1692g(a)(4) or to obtain the name and address of the

---

[3] As explained in both Miller and Dupuy, "where the amount varies from day to day" as was the case here, the debt collector can potentially satisfy Section 1692g(a)(1) by using "safe harbor" language similar to the following:

> "As of the date of this letter, you owe $___ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800- [phone number]."

Miller, 214 F.3d at 876; Dupuy, 442 F. Supp. 2d at 828 n.4. In the present case, the dunning letter sent by Defendant does not contain any language even remotely close to the above-quoted notice.

1 original creditor under Section 1692g(a)(5), the request had to be in writing. As Welker argues, the
2 Ninth Circuit in <u>Camacho v. Bridgeport Fin. Inc.</u> observed that the FDCPA "assigns lesser rights to
3 debtors who orally dispute a debt and greater rights to debtors who dispute it in writing." 430 F.3d
4 1078, 1082 (9th Cir. 2005). "The plain meaning of § 1692g is that debtors can trigger the rights under
5 subsection (a)(3) by either an oral or written 'dispute,' while debtors can trigger the rights under
6 subsections (a)(4) and (a)(5) *only through written dispute*." <u>Id.</u> (emphasis added).

7 The Ninth Circuit in <u>Camacho</u>, however, was only faced with the question of whether *adding*
8 the "in writing" requirement to where it was not statutorily required violated the FDCPA. <u>Id.</u> The
9 court concluded that it did. <u>Id.</u> (holding that the defendant's collection notice violated § 1692g insofar
10 as it stated that disputes under subsection (a)(3) had to be in writing). Nonetheless, by extension,
11 <u>Camacho</u>'s reasoning also makes it clear that *omitting* the "in writing" requirement where it is
12 statutorily required would equally violate the FDCPA. <u>See id.</u> at 1081-82. Although the Ninth Circuit
13 has not expressly held so yet, other district courts to consider the issue have come to this conclusion.
14 <u>See, e.g.</u>, <u>Nero v. Law Office of Streeter, P.L.L.C.</u>, 655 F. Supp. 2d 200, 206 (E.D. N.Y. 2009) ("[T]he
15 validation notice clearly omitted an important term–that the consumer must inform the debt collector
16 in writing to be entitled to verification of the debt [pursuant to sub-section (a)(4)]."); <u>Yrok Gee Au
17 Chan v. North Am. Collectors, Inc.</u>, No. C 06-0016 JL, 2006 WL 778642, at *6 (N.D. Cal. Mar. 24,
18 2006) (finding a violation of the FDCPA where the validation notice "fail[ed] to inform the consumer
19 that he must dispute the debt *in writing* to preserve his right [under sub-section (a)(4)]" (emphasis in
20 original)); <u>McCabe v. Crawford & Co.</u>, 272 F. Supp. 2d 736, 743 (N.D. Ill. 2003) ("[B]y omitting the
21 words 'in writing,' Crawford did not effectively convey to the consumer his rights under [sub-section
22 (a)(4) of] the FDCPA and thus violated the Act." (citation omitted)); <u>Grief v. Wilson, Elser,
23 Moskowitz, Edelman & Dicker, LLP</u>, 217 F. Supp. 2d 336, 340 (E.D. N.Y. 2002) ("Without a
24 statement that [the requests under sub-sections (a)(4) and (a)(5)] must be in writing, the least
25 sophisticated consumer is not simply uncertain of her rights under the statute, she is completely
26 unaware of them." (internal citation omitted)).

27 As the Ninth Circuit has indicated, "'[w]hen the statute's language is plain, the sole function
28 of the courts–at least where the disposition required by the text is not absurd–is to enforce it according

to its terms.'" Camacho, 430 F.3d at 1081 (quoting Lamie v. United States Trustee, 540 U.S. 526, 534 (2004)). In the present case, the plain reading of Section 1692g reveals that to be entitled to the protections set forth in subsections (a)(4) and (a)(5), the corresponding requests must be made in writing. There is also no indication that upholding such a requirement would be absurd. Accordingly, there can be no dispute Defendant violated the FDCPA insofar as his dunning letter failed to advise Welker that to be entitled to a verification of the debt under subsection (a)(4) or to obtain the name and address of the original creditor under subsection (a)(5) the request had to be in writing,

### B.  Bona fide error defense

Defendant argues he can avoid liability under the FDCPA due to a bona fide error exception. Generally speaking, the FDCPA is a strict liability statute, which does not require plaintiff to show that the violation was either knowing or intentional. See Clark v. Capital Credit & Collection Serv., Inc., 460 F.3d 1162, 1176 & n.11 (9th Cir. 2006). However, the FDCPA provides a "narrow exception to strict liability" for bona fide errors. See id. at 1177. Section 1692k(c) provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was [1] not intentional and [2] resulted from a bona fide error [3] notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). The bona fide error defense is an affirmative defense, for which the defendant has the burden of proof. Reichert v. Nat'l Credit Sys., Inc., 531 F.3d 1002, 1006 (9th Cir. 2008). To be entitled to the defense, the defendant must first establish that the violation was "not intentional." See 15 U.S.C. § 1692k(c); Johnson v. Riddle, 443 F.3d 723, 728 (10th Cir. 2006). This inquiry is inherently subjective and "becomes principally a credibility question" as to whether the defendant *intended to violate* the FDCPA. Johnson, 443 F.3d at 728. Once the subjective intent is established, the defendant must also demonstrate that the error was "bona fide" and that it occurred "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." See 15 U.S.C. § 1692k(c); Johnson, 443 F.3d at 729. "Whereas the intent prong of the bona fide error defense is a subjective test, the bona fide and the procedures prongs are necessarily objective tests." Johnson, 443 F.3d at 729 (citations omitted). The Ninth Circuit uses a two-step process to determine whether the procedures prong is met in any given case: first, the debt collector must "maintain[]"–i.e., actually employ or implement–procedures to avoid errors; and second, the procedures must be

"reasonably adapted" to "'avoid the *specific error* at issue.'" Reichert, 531 F.3d at 1006 (quoting Johnson, 443 F.3d at 729) (emphasis added). Whether the procedures were reasonably adapted is "'a fact-intensive question.'" Id. (quoting Wilhelm v. Credico Inc., 519 F.3d 416, 421 (8th Cir. 2008)).

In the present case, Defendant has not shown there is a genuine issue of material fact as to the elements of the bona fide error defense. According to Defendant, the validation notice sent to Welker was based on an older template that Defendant has not used since April 16, 2008. Defendant contends the older template, which omitted the words "in writing" and "written" when referring to the requirements of subsections (a)(4) and (a)(5) and failed to state the total amount of the debt due, was erroneously retrieved due to a computer glitch. In an attempt to show the error was bona fide, Defendant provides a detailed account of the training he has received and the resources he uses to practice law in the area of debt collection. Defendant also recounts the circumstances that prompted him to rewrite in April 2008 the template used for his validation notices.[4] Finally, Defendant documents the reasonable precautions he has taken after the error in this case was discovered, such as: (1) updating all the other validation notice versions as the form is updated, (2) archiving all of the obsolete validation notices, and (3) amending his search parameters to now avoid archived files.

As an initial matter, the Court agrees that Defendant's error was "not intentional" because there is no indication Defendant intended to violate the FDCPA. See Johnson, 443 F.3d at 728 (concluding that the pertinent question is whether the *violation* was intentional, and not whether the *conduct* was intentional). However, that by itself is not sufficient to entitle Defendant to a bona fide error defense. The defense also requires Defendant to show he maintains "reasonably adapted" procedures to avoid such errors. See Reichert, 531 F.3d at 1006. In the present case, none of the measures recited by Defendant demonstrate any procedures that he had at the time the error occurred that were reasonably adapted to avoid the *specific error* at issue. As the Ninth Circuit has indicated, "[i]f the bona fide error defense is to have any meaning in the context of a strict liability statute, then

---

[4] According to Defendant, on April 16, 2008, he attended a collection law seminar by Ronald H. Sargis. After the seminar, Mr. Sargis looked at the validation notice used by Defendant and noted several changes that should be made, such as: (1) stating a *firm amount* of the debt owed, and (2) requiring that the responses to the validation be *in writing*. Defendant attaches examples of the dunning letters both pre- and post-April 16, 2008 to demonstrate that changes were in fact made to make those letters comply with the requirements of sub-sections (a)(1), (a)(4), and (a)(5). (Compare Horwitz Decl., Exs. E, F, G, with id., Exs. I, J, L, M.)

a showing of 'procedures reasonably adapted to avoid any such error' must require more than a mere assertion to that effect. The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error." Id. at 1007 (citation omitted). In the present case, Defendant's expertise and training notwithstanding, the record is devoid of explanation of any measures used to avoid computer glitches such as occurred in this case or of avoiding sending letters that accidentally omitted certain FDCPA required warnings.[5] Accordingly, even viewing the facts in the light most favorable to Defendant, Defendant failed to demonstrate there is any genuine issue of material fact as to the application of the bona fide error defense. See Reese, 208 F.3d at 738.

C.   Conclusion

Because there is no genuine issue of material fact and because Defendant is not entitled to a bona fide error defense, summary judgment is appropriate on both of Welker's FDCPA claims. Accordingly, the Court **GRANTS** Plaintiff's Motion for Summary Judgement to the extent it seeks to hold Defendant liable for failing to provide the total amount of the debt as required by Section 1692g(a)(1) as well as the notice required by Section 1692g(a)(4) and (a)(5)**.**

**II.   The Rosenthal Act**

A.   Summary judgment on the Rosenthal Act claim

Finally, Welker also alleges Defendant violated Section 1812.700 of the California Civil Code by failing to provide the notice required by that section. (See supra n.2.) Pursuant to Section 1812.702, the failure to provide this notice "shall be considered a violation of the [Rosenthal Act]." CAL. CIV. CODE § 1812.702. In the present case, there is no dispute that Defendant's dunning letter did not contain the required notice. Accordingly, by failing to include the required notice pursuant to Section 1812.700, Defendant violated the Rosenthal Act. See id.

///

///

---

[5] In this respect, the cases relied upon by Defendant are inapposite. See, e.g., Gaisser v. Portfolio Recovery Assoc., LLC, 593 F. Supp. 2d 1297, 1301-03 (S.D. Fla. 2009) (denying defendant's motion for summary judgment on the bona fide error defense where questions of material fact remained as to the issue of procedures used); McDaniel v. South & Assoc., Inc., 325 F. Supp. 2d 1210, 1218-19 (D. Kan. 2004) (denying cross-motions for summary judgment where the record specifically indicated the law firm used a case management system to ensure that collection activity ceases when a consumer requests debt verification).

B.   Asserted defenses

   i.   *Whether Rosenthal Act applies to attorneys such as Defendant.*

Defendant first argues he is not liable under the Rosenthal Act because of a specific statutory exclusion for lawyers. Defendant is correct in that Section 1788.2(c) explicitly states that the term "debt collector" *as used in the Rosenthal Act* "does not include an attorney or counselor at law." See CAL. CIV. CODE § 1788.2(c); accord Abels v. JBC Legal Group, P.C., 227 F.R.D. 541, 547-48 (N.D. Cal. 2005) ("Interpreting the plain language of the statute, it appears clear on its face that CA FDCPA 'does not include an attorney.'"). However, in the present case, the real question is whether Defendant is subject to Section 1812.700, which is the basis for Plaintiff's Rosenthal Act claim. Section 1812.700 is separate from the Rosenthal Act and, contrary to the Rosenthal Act itself, specifically applies to "third-party debt collectors *subject to the federal Fair Debt Collection Practices Act*." CAL. CIV. CODE § 1812.700(a) (emphasis added). The Supreme Court has expressly held that attorneys who regularly engage in debt collection activities fall within this category. See Heintz v. Jenkins, 514 U.S. 291, 299 (1995) (concluding that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation"). In the present case, Defendant concedes that he is a "debt collector" as defined in the FDCPA. (See Amended Answer ¶ 13.) Accordingly, Defendant is subject to the requirements of Section 1812.700.[6]

   ii.   *Whether Defendant's conduct is protected by the litigation privilege.*

Defendant next argues he is protected by the California litigation privilege because he sent the dunning letter within, or in connection with, judicial proceedings. The California litigation privilege protects statements made in any judicial proceeding. CAL. CIV. CODE § 47(b). The privilege "applies

---

[6] The Court is not persuaded by Defendant's arguments to the contrary. Defendant argues Welker is attempting to have it both ways: (1) subject him to liability under the Rosenthal Act, but (2) use the definition of the "debt collector" as set forth in the FDCPA. Although the Court is sympathetic to Defendant's argument, the approach advocated by Defendant is foreclosed by the plain reading of Section 1812.702, which makes any violation of Section 1812.700 be considered a violation of the Rosenthal Act, but does not at the same time incorporate the Rosenthal Act's definition of the "debt collector." See Cal. Civ. Code § 1812.702 ("Any violation of this act shall be considered a violation of the Rosenthal Fair Debt Collection Practices Act (Title 1.6C (commencing with Section 1788))."). Indeed, as the authors of one treatise have recently noted, in light of Section 1812.700, attorneys such as Defendant may have effectively lost their exemption from the Rosenthal Act, at least in this one respect. See MANUEL H. NEWBURGER & BARBARA M. BARRON, FAIR DEBT COLLECTION PRACTICES: FEDERAL AND STATE LAW AND REGULATION ¶ 6.05[5] (2009), *available at* FDCP ¶ 6.05[5].

1  to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other
2  participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some
3  connection or logical relation to the action." Silberg v. Anderson, 50 Cal. 3d 205, 212 (1990) (citations
4  omitted). The privilege covers any communication made "to achieve the objects of the litigation, even
5  though the publication is made outside the courtroom and no function of the court or its officers is
6  involved." See id. (citations omitted).

7       This Court has previously concluded the litigation privilege does not apply to Welker's claims
8  under the FDCPA or the Rosenthal Act. See Welker v. Law Office of Horwitz, 626 F. Supp. 2d 1068,
9  1072 (S.D. Cal. 2009). Defendant, however, argues the Court at that time erroneously assumed there
10 were no judicial proceedings ongoing when the dunning letter was mailed.[7] Moreover, Defendant
11 points to California case law subsequent to this Court's decision as establishing that the litigation
12 privilege can be applied in this case without doing any damage to the Rosenthal Act.

13      The California cases cited by Defendant, however, are insufficient to persuade the Court to
14 reconsider its prior ruling; rather, if anything, they support the Court's decision that the litigation
15 privilege does not apply here. For example, in Komarova v. Nat'l Credit Acceptance, Inc., the
16 California Court of Appeal noted that while some federal courts "have found the privilege to be
17 applicable," "most have concluded that the privilege must yield in this context." 175 Cal. App. 4th
18 324, 337 (2009) (citing cases, including Welker, 626 F. Supp. 2d 1068). Accordingly, the Court of
19 Appeal agreed with the majority of the district courts *and with this Court* that "the privilege cannot
20 be used to shield violations of the [Rosenthal] Act." Id. Similarly, in Cabral v. Martins, the California
21 Court of Appeal reasoned that the answer to the question of whether the litigation privilege applied
22 was "to be determined by examining whether application of the section 47(b) privilege would vitiate
23 the [statute at issue] to such an extent as to render the latter meaningless." 177 Cal. App. 4th 471, 488
24 (2009). In the case before it, which involved child support evasion statutes, the Court of Appeal
25 concluded that those statutes would not be rendered meaningless if the litigation privilege protected

---

[7] As Welker correctly points out, this argument seems to be misplaced. The portion of the Court's order that Defendant points to as erroneously assuming that there was no evidence of litigation was actually addressing the Defendant's anti-SLAPP motion, and not the issue of litigation privilege. See Welker, 626 F. Supp. 2d at 703.

an attorney's revision of an estate plan. Id. at 488-89.

The present case is more akin to Komarova than to Cabral. In this case, if the Court were to apply the litigation privilege to protect Defendant's improper dunning letter, that decision would in effect render the Rosenthal Act inoperable. See Komarova, 175 Cal. App. 4th at 340 (concluding that the Rosenthal Act "would be significantly inoperable if it did not prevail over the privilege where, as here, the two conflict."). As is evident from the facts of this case, Defendant's communications with alleged debtors occur in conjunction with the collection lawsuits filed against them in state court. If the Court were to protect all of those communications, the Rosenthal Act would be vitiated "to such an extent as to render [it] meaningless." See Cabral, 177 Cal. App. 4th at 488. Indeed, as the California Court of Appeal recognized, the Court must be "mindful of the ease with which the Act could be circumvented if the litigation privilege applied. In that event, unfair debt collection practices could be immunized merely by filing suit on the debt." Komarova, 175 Cal. App. 4th at 340. Accordingly, the Court reaffirms its prior ruling that the litigation privilege does not apply in this context.[8]

     *iii.*  *State interrogatories*

Finally, Defendant contends that Welker's failure to identify him in her response to an interrogatory request as one of the individuals who she thought violated the Rosenthal Act precludes Welker from now asserting that Defendant violated the Rosenthal Act.[9] Defendant, however, fails to cite any law that would afford preclusive effect in a *federal* action to party's answers to *state* interrogatories. Moreover, the Ninth Circuit has indicated on several occasions that answers to

---

[8] Defendant's reliance on Cassady v. Union Adjustment Co., No. C 07-5405 SI, 2008 WL 4773976 (N.D. Cal. Oct. 27, 2008), is inapposite. In that case, unlike this one, "the only claim to survive summary judgment [was] plaintiff's claim under federal and state law that Union sought to collect a debt that plaintiff was not legally obligated to pay," and therefore "the 'only allegedly wrongful debt collection practices in [that] case occurred entirely in the context of the filing of a state court complaint to recover a debt.'" Id. at **6-7 (citation omitted). On the other hand, in the present case, there are independent Rosenthal Act violations asserted by Welker that would be affected if the litigation privilege applied to Defendant's conduct.

[9] Defendant's Form Interrogatory No. 114.1 in the state action asked Plaintiff: "If you contend that any PERSON involved in the INCIDENT violated any statute, ordinance, or regulation and that the violation was a cause of the INCIDENT, identify each PERSON and the statute, ordinance, or regulation." (Def. Opp. to Pl. MSJ, Ex. C, at 3.) The word "incident" was defined as "[t]he facts, circumstances and events related to the cause of action for Violation of the Rosenthal Fair Debt Collection Practices Act." (Id., Ex. C, at 2.) Plaintiff responded by only listing Ronald Gertsch, Adam Dustin, and Ambulatory Care Surgery Center. (Id., Ex. D, at 7.)

1  interrogatories are not binding as admissions. See, e.g., Donovan v. Crisostomo, 689 F.2d 869, 875
2  (9th Cir. 1982) ("Interrogatories do not supersede or supplement pleadings, nor do they bind parties
3  as an allegation or admission in a pleading or pre-trial order." (citations omitted)); Victory Carriers,
4  Inc. v. Stockton Stevedoring Co., 388 F.2d 955, 959 (9th Cir. 1968) ("An answer to an interrogatory
5  is comparable to answers, which may be mistaken, given in deposition testimony or during the course
6  of the trial itself. Answers to interrogatories must often be supplied before investigation is completed
7  and can rest only upon knowledge which is available at the time."). Accordingly, Welker is not bound
8  in this action by her answers to state interrogatories.

      C.    Conclusion

For the foregoing reasons, the Court **REJECTS** all of Defendant's defenses to Plaintiff's Rosenthal Act claim. The Court **GRANTS** Plaintiff's summary judgment motion to the extent it alleges Defendant violated the Rosenthal Act when he failed to provide Welker with the notice required by Section 1812.700 of the California Civil Code.

**CONCLUSION**

Accordingly, the Court **GRANTS** the Motion for Summary Judgment in its entirety. The Court also **ORDERS** that Plaintiff submit additional briefing on the following issues:

(1)    What claims in the Complaint, if any, remain to be adjudicated;

(2)    What amount of damages is being sought with respect to the claims on which the Court granted summary judgment; and

(3)    Whether a trial is necessary on either of the above.

Plaintiff's brief shall be filed no later than **April 9, 2010**. Defendant's opposition shall be due no later than **April 16, 2010**. Plaintiff's reply shall be due no later than **April 23, 2010**.

**IT IS SO ORDERED.**

DATED: March 25, 2010

                              IRMA E. GONZALEZ, Chief Judge
                              United States District Court